Ann A. BATTAGLIA,
Petitioner/Cross-Respondent,

and

Director, Office of Workers' Compensation Programs, U. S. Department of Labor, Cross-Respondent,

v.

PEABODY COAL COMPANY and Old Republic Insurance Company, Respondents/Cross-Petitioners.

Nos. 81–2289, 81–2392.

United States Court of Appeals,
Seventh Circuit.

Argued March 30, 1982.

Decided Sept. 29, 1982.

Thomas W. Hill, Emens, Hurd, Kegler & Ritter, Columbus, Ohio, for petitioner/cross-respondent.

W. C. Blanton, Ice Miller Donadio & Ryan, Indianapolis, Ind., for respondents/cross-petitioners.

Before BAUER, Circuit Judge, NICHOLS,* Judge, and WOOD, Circuit Judge.

NICHOLS, Judge.

This case is another of the "Black Lung" cases argued before us on March 30, 1982. Petitioner/cross-respondent Ann A. Battaglia, referred to in this opinion as "claimant," filed a claim for benefits pursuant to the provisions of Title IV of the Federal Coal Mine Health and Safety Act of 1969, *as amended,* now known as the Black Lung Benefits Act (hereinafter the Act), 30 U.S.C. §§ 901, *et seq.* The claim was filed on June 13, 1975, by claimant as the widow of Olis A. Battaglia. Mr. Battaglia was employed as a strip miner continuously from 1938 until the day he died which was on May 30, 1975. The last several years of his coal mine employment were for the respondent/cross-petitioner, Peabody Coal Company. Peabody Coal and Old Republic Insurance Company, also named as co-respondent/cross-petitioner, will be jointly referred to alternatively either as "employer" or as "respondents" for the remainder of this opinion.

Claimant sought benefits on the basis of the presumption provided by section 411(c)(5) of the Act, 30 U.S.C. § 921(c)(5), a provision which was added to the Act by section 3(a)(3) of the Black Lung Benefits Reform Act of 1977, Pub.L.No. 95–239, 92 Stat. 95 (1978).

30 U.S.C. § 921(c)(5) provides:

In the case of a miner who dies on or before March 1, 1978, who was employed for 25 years or more in one or more coal mines before June 30, 1971, the eligible survivors of such miner shall be entitled to the payment of benefits, at the rate applicable under section 922(a)(2) of this title, unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis. Eligible survivors shall, upon request by the Secretary, furnish such evidence as is available with respect to the health of the miner at the time of his or her death.

Evidence presented by the employer to rebut the presumption of entitlement to benefits consisted of: (1) five chest X-ray reports on the condition of Mr. Battaglia's lungs, all negative for pneumoconiosis; (2) hospital records and physician reports which detail a long history of coronary heart disease in decedent; (3) a death certificate which identified the immediate cause of death as an acute myocardial infarction due to coronary heart disease, and did not make any mention of pneumoconiosis; and (4) the

---

* The Honorable Philip Nichols, Jr., Associate Judge of the United States Court of Claims, is sitting by designation.

fact that Mr. Battaglia was employed full time as a miner up until the time of his death.

Administrative Law Judge (ALJ) Eric Feirtag, found that as the widow of Mr. Battaglia, claimant was entitled to the benefits pursuant to § 921(c)(5). The ALJ took claimant's testimony which, as corroborated by affidavits of three of Mr. Battaglia's former co-workers, established that during the latter years of his life he suffered from labored breathing which impaired his capacity to perform certain tasks or activities both at work and away from work.

The ALJ held that the employer's evidence failed to establish that Mr. Battaglia was not at least partially disabled due to pneumoconiosis in view of 30 U.S.C. § 921(c)(5) and the regulation which implemented the § 921(c)(5) presumption, 20 C.F.R. § 727.204. The ALJ therefore ordered the employer to pay full benefits to the claimant.

The latter regulation provides:

(a) In the case of a miner who died on or before March 1, 1978, who was employed for 25 or more years in one or more coal mines prior to June 30, 1971, the eligible survivors of such miner shall be entitled to the payment of benefits, unless it is established that at the time of death such miner was not partially or totally disabled due to pneumoconiosis. Eligible survivors shall, upon request by the Office, furnish such evidence as is available with respect to the health of the miner at the time of death, and the length of the miner's coal mine employment.

(b) For the purpose of this section a miner will be considered to have been "partially disabled" if he or she had reduced ability to engage in his or her usual coal mine work or "comparable and gainful work" (see part 718 of this subchapter as amended from time to time).

(c) In order to rebut this presumption the evidence must demonstrate that the miner's ability to perform his or her usual and customary work or "comparable and gainful work" was not reduced at the time of his or her death or that the miner did not have pneumoconiosis.

(d) The following evidence alone shall not be sufficient to rebut the presumption:

(1) Evidence that a deceased miner was employed in a coal mine at the time of death;

(2) Evidence pertaining to a deceased miner's level of earnings prior to death;

(3) A chest X-ray interpreted as negative for the existence of pneumoconiosis;

(4) A death certificate which makes no mention of pneumoconiosis.

On review of the ALJ's decision, the board, with one member dissenting, reaffirmed its power to rule on the constitutionality of the various Acts and regulations under their jurisdiction, a position originally articulated in *McCluskey v. Zeigler Coal Co.*, 2 BLR 1–1248 (1981). The board also affirmed the ALJ's invocation and use of the § 921(c)(5) presumption. The board stated that under its decision in *Trujillo v. Kaiser Steel Corp.*, ——— BLR ———, BRB No. 78–398 BLA (1981), there are three methods of rebutting the § 921(c)(5) presumption namely: (1) the miner did not have coal worker's pneumoconiosis; or (2) the miner was not partially or totally disabled at the time of death; or (3) the partial or total disability which the miner may have suffered at the time of his death was not due to pneumoconiosis. Pointing to 20 C.F.R. § 727.205(d), quoted above, the board held that evidence within the four categories listed in § (d) but aggregating more than one of them could be sufficient to rebut the presumption here in question. Finding that the ALJ treated each of the categories individually, and he did not consider their cumulative impact, the board reversed the ALJ's decision holding that the record as a whole established that the miner did not suffer even partial disability due to pneumoconiosis at the time of his death. In fact, the board concluded that Mr. Battaglia did not suffer from pneumoconiosis at all since it found (a) the evidence established that the cause of any disability experienced

by Mr. Battaglia was heart disease; and (b) although lay testimony was properly admitted into evidence it could not, without supporting medical evidence, be the sole basis for disbelieving affirmative medical evidence that the miner was not wholly or partially disabled by pneumoconiosis.

I

The claimant appeals the board decision asserting errors of law, a denial of due process, and arbitrary and capricious conduct. More specifically, claimant contends that the board erred as a matter of law in holding the presumption rebutted because the four types of evidence listed at 20 C.F.R. § 727.204(d) are each inherently unreliable and lack probative value, thus, taken together, they cannot have a greater effect than each type does individually. Next, claimant argues that the board denied her due process by retroactively changing its position regarding the inclusion in evidence of the four types of evidence mentioned above. Claimant points to the *Black Lung Desk Book,* published by the board, which specifically "excludes" the four types of evidence as proof of the absence of total or partial disability due to pneumoconiosis. In preparing her case, claimant relied on the ostensible board position, as stated in the *Black Lung Desk Book,* and did not prepare, it is argued, to meet any of the four types of evidence, all to her detriment. Furthermore, claimant asserts, evidence which is merely silent as to the existence of pneumoconiosis is insufficient to rebut the presumption invoked in her favor. An additional ground advanced to support her contention of board error is that the board ignored the expanded definition of pneumoconiosis which in "black lung" practice means more than just clinical pneumoconiosis. The ALJ was presented with evidence that Mr. Battaglia suffered from "exertional dyspnea." Dyspnea, or shortness of breath, is symptomatic of pneumoconiosis. Claimant tells us that no evidence was presented as to the cause of Mr. Battaglia's dyspnea, and since it was the employer's burden to rebut the presumption of disability due to pneumoconiosis and it failed to prove that the dyspnea was not due to pneumoconiosis, the board erred in its decision. Finally, claimant contends that the board erred in holding lay testimony unaccompanied by some medical evidence is insufficient to establish the existence of disability due to pneumoconiosis.

The employer takes issue with all of the claimant's contentions arguing, *inter alia,* that the *Black Lung Desk Book* was only an internal document intended for departmental use, not an official board interpretation of a regulation. Hence, claimant's reliance on information set forth therein was unreasonable.

The employer also enters a cross-appeal contending that the presumption as invoked in this case is unconstitutionally irrational if generally applied to surface miners. This position is supported by the employer's analysis of the legislative history of the Act and its amendments. In the legislative history we are told that all of the evidence showing a connection between the length of employment and black lung disease only related to underground, not surface miners.

The cross-respondent, Director, Office of Workers' Compensation Programs, United States Department of Labor (Director), asserts that as an initial matter, Congress acted rationally in creating a rebuttable presumption that certain deceased miners who had worked for 25 years in coal mines were partially disabled by black lung disease at the time of their deaths. Citing *Usery v. Turner-Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), the Director argues that similar presumptions created under the Act have been upheld by the Supreme Court. In a footnote, the Director reiterates the view that the board is not empowered to adjudicate the constitutionality of the statute it administers. The Director's position on the latter point has been briefed in a more detailed manner in another case argued on the same date as this case. *See* brief for cross-respondent Director, *Underhill v. Peabody Coal Co.,* 687 F.2d 217, *appeals docketed,* (7th Cir. 1981).

For the reasons that follow, we hold that 30 U.S.C. § 921(c)(5) is constitutionally valid as against respondents due process attack; that the decision and order of the Benefits Review Board is vacated; and the case remanded for proceedings not inconsistent with this opinion.

## II

We first address respondent's due process attack on 30 U.S.C. § 921(c)(5). The Supreme Court has set forth the standard for judging the validity of presumptions, such as we have before us, in *Turner-Elkhorn, supra*. In that case the Court held that the presumptions contained in sections 411(c)(1)–(4) of the Act, 30 U.S.C. §§ 921(c)(1)–(4), did not violate the due process clause of the fifth amendment because for a legislative presumption involving a matter of economic regulation to be valid under the due process clause, " 'it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate.' " *Usery v. Turner-Elkhorn Mining Co.*, 428 U.S. at 28, 96 S.Ct. at 2898 (quoting *Mobile, Jackson and Kansas City Railroad Co. v. Turnipseed*, 219 U.S. 35, 43, 31 S.Ct. 136, 138, 55 L.Ed. 78 (1910)).

Initially, we note that the language of the statute makes no distinction between underground miners and aboveground miners. Section 921(c)(5), by its own terms, applies to miners who were employed "in one or more coal mines." "Coal mines," as defined by the regulations, includes both aboveground and underground coal mining operations. 20 C.F.R. § 725.101(a)(23).

Our task therefore is to assess whether, judged by the *Turner-Elkhorn* standard, the facts proved, 25 years of coal mine employment before June 30, 1971, and the miner's death before March 1, 1978, on one hand, and the presumed fact, *i.e.*, entitlement of survivors to benefits on the other, are rationally connected. Survivors are entitled to benefits under § 921(c)(5) unless the employer can show that the decedent miner was neither partially nor totally disabled by pneumoconiosis at death. Thus, the facts presumed are partial or total disability by pneumoconiosis at death.

■ Legislative enactments adjusting the burdens and benefits of economic life carry a presumption of constitutionality and the burden is on the complaining party, here respondents, to establish that Congress acted in an arbitrary and irrational way. *Turner-Elkhorn*, 428 U.S. at 15, 96 S.Ct. at 2892. Stated alternatively, it is respondents' burden to show that Congress did not have sufficient reason when § 921(c)(5) was passed, from which Congress could rationally conclude that 25 years of coal mine employment before June 30, 1971, and death of the miner before March 1, 1978, could give rise to total or partial disability due to pneumoconiosis at the time of the miner's death.

In seeking to carry this burden, respondents make what is essentially a two-fold contention. Initially they argue that of all the evidence Congress had before it from which Congress could rationally conclude that duration of employment alone would give rise to total or partial disability due to pneumoconiosis at death, none of the evidence pertained to surface mines; rather all such evidence was premised on conditions found in underground mines. Secondly, respondents advance the argument that the presumptions upheld by the Supreme Court in *Turner-Elkhorn* required proof of duration of employment plus proof of a critical medical fact in order that another medical fact or facts could be presumed. In contrast, respondents urge, § 921(c)(5) creates a presumption of critical medical facts merely from proof of one nonmedical fact, *i.e.*, 25 years of coal mine employment, thus failing to meet the standard of *Turner-Elkhorn*. Respondents do not contest the rationality of the relation between the dates specified in § 921(c)(5), *i.e.*, June 30, 1971, and March 1, 1978, and the presumed facts. Our analysis will therefore be confined to the rationality of the relation between the duration of coal mine employment, *i.e.*, 25

years, and the presumed facts, *i.e.,* total or partial disability due to pneumoconiosis at death.

█ Our examination of the legislative history discloses that respondents' contentions are incorrect; that a rational connection exists, to the knowledge of Congress, between the facts proven and the facts presumed; and that § 921(c)(5) fully comports with the standards set forth in *Turner-Elkhorn* and *Turnipseed.*

Congress had before it evidence that the length of coal mine employment, *i.e.,* the length of exposure to coal dust, was directly related to the incidence of pneumoconiosis. Without our undertaking an exhaustive analysis of the voluminous legislative history, a few examples will serve to illustrate the point. For example, the House of Representatives Committee on Education and Labor Report noted specifically the testimony of Murray B. Hunter, M.D., who stated, *inter alia,* that:

It is exposure over time that produces coal workers pneumoconiosis and the enactment of a reasonable presumption that thus and so many years of exposure to coal mine dust, be it 25, 30, or 35 is enough, represents sound social policy.

\* \* \*

H.R.REP.No. 91–151, 95 Cong.2d Sess. 6 (1977), *reprinted in* [1978] U.S.CODE CONG. & AD.NEWS 237, 242.

Similarly, Dr. Daniel Fine, a specialist in internal medicine, stated:

\* \* \* [B]earing in mind the unlikelihood of establishing a meaningful objective quantifiable test of disability, recognizing the progressive and almost inevitable exposure of coal miners to dust inhalation over a period of years, and accepting the reasonable presumption that deposition of coal and silica and other minerals in the lungs is a deleterious body burden, it would seem eminently fair and humane to recognize as a matter of law that the passage of a given number of years as a coal miner is, in and of itself, reasonable evidence of a substantial burden of lung damage from coal mining and to compensate the miner accordingly. \* \* \*

[*Id.*]

In their reply brief, respondents tell us that the testimony of Drs. Fine and Hunter pertained to the long term effects of dust inhalation by underground miners. While that contention may be true, there is no indication in the legislative history that the above-quoted excerpts were limited in their observations only to underground mining as contrasted with surface mining conditions. While there exists significant testimony and other evidence pointing out differences between surface mining and underground mining conditions in the legislative history of the Act, those distinctions mean very little in the context of our constitutional analysis. On review of congressional legislation which affect economic life, the court's duties are discharged when, as here, it is abundantly clear that Congress could rationally conclude that 25 years or more in the nation's coal mines could give rise to a sufficient presumption of total or partial disability due to pneumoconiosis to shift the burden of rebuttal to the responsible employer.

Respondents point to conflicting testimony regarding the wisdom of adopting the statutory provision here in question. Indeed, they point to one study found in the legislative history of the 1972 amendments to the Act, wherein it was concluded that of the roughly 25,000 surface miners, an approximate high number of coal miners afflicted by pneumoconiosis would be 450 individuals. Notwithstanding the fact that this bit of legislative history pertained to the 1972 amendments, not to those enacted in 1977, these factual representations militate against respondents' assertion that Congress was irrational in creating the presumption on review before us. In the first instance, the facts show that surface miners do contract pneumoconiosis, however small the numbers may be. Secondly, they underscore congressional rationality, because when Congress made the presumption rebuttable, it took into account both the concerns of the miners and their employers.

Assuming the statistical accuracy of the study relied on, the employer remains free to show, as part of its rebuttal evidence, that the miner worked in surface extraction and the resultant risk was less to whatever degree the evidence would show. Some surface work would be more dangerous, other work less so. The presumption therefore does not, as respondents contend, obliterate the surface-underground mine distinction. It is essentially the duty of the employer to show the conditions at the actual work place, a burden feasible for him to bear. Furthermore, as far as courts are concerned, the fact that there is a disagreement in the medical community concerning the incidence, degree, and variety of pneumoconiosis in underground and surface miners, does not render the congressional judgment irrational. In a medically controversial area such as this which is neither "within specialized judicial competence [n]or completely commonplace," Congress should be permitted to assess the evidence and establish its own presumptions. *Turner-Elkhorn,* 428 U.S. at 33, 96 S.Ct. at 2900 (quoting *United States v. Gainey,* 380 U.S. 63, 67, 85 S.Ct. 754, 757, 13 L.Ed.2d 658 (1965)). The employer is the party most likely to possess evidence of the perils or safety of the employee's actual work place. It is not as if the presumption were irrebuttable or rebuttal made a specifically heavy burden. We are therefore not persuaded by respondents' contentions that § 921(c)(5) is either arbitrary or irrational as applied to all coal miners.

It is worth noting that three of the presumptions upheld in *Turner-Elkhorn* were applicable to all miners, whether surface or underground. The fourth presumption, 30 U.S.C. § 921(c)(4) is expressly made applicable to any surface miner upon a demonstration that such miner worked under conditions substantially similar to those in an underground mine. Although the three presumptions, §§ 921(c)1–(3), all originally only applied to underground miners, they were, along with § 921(c)(4), all made applicable to claims involving surface miners since 1972. *See* Black Lung Benefits Act of 1972, Pub.L.No. 92–303, 86 Stat. 150. In 1976, some 4 years later, the Supreme Court upheld the constitutionality of all four presumptions in *Turner-Elkhorn* making no distinction between surface and underground miners.

This brings us to consider respondents' second ground for challenging the constitutionality of § 921(c)(5). Respondents focus on the Court's language in *Turner-Elkhorn,* 428 U.S. at 29, 96 S.Ct. at 2898, where it is stated:

> * * * It is worth repeating that mine employment for 10 years does not serve by itself to activate any presumption of pneumoconiosis; it simply serves along with proof of pneumoconiosis under § 411(c)(1) to presumptively establish the cause of pneumoconiosis, and along with proof of death from a respiratory disease under § 411(c)(2) to presumptively establish that death was due to pneumoconiosis. * * *

Respondents go on to argue on the strength of the above quotation that the Court upheld the constitutionality of each presumption because the Court found that length of employment, plus proof of one "critical" medical fact, constitutes a rational connection supporting the presumption of another medical fact.

Respondents apparently ignore the Court's statements in the remainder of the paragraph which precede and succeed that portion upon which they so heavily rely. There the Court states:

> The Operators insist, however, that the 10-year presumptions are arbitrary, because they fail to account for varying degrees of exposure, some of which would pose lesser dangers than others. We reject this contention. In providing for a shifting of the burden of going forward to the operators, Congress was no more constrained to require a preliminary showing of the degree of dust concentration to which a miner was exposed, a historical fact difficult for the miner to prove, than it was to require a preliminary showing with respect to all other factors that might bear on the danger of infection.

[Here appears that portion of the paragraph quoted above and relied on by respondents.]

* * * In its "rough accommodations," *Metropolis Theatre Co. v. Chicago,* 228 U.S. 61, 69 [33 S.Ct. 441, 443, 57 L.Ed. 730] (1913), *Congress was surely entitled to select duration of employment, to the exclusion of the degree of dust exposure and other relevant factors,* as signaling the point at which the operator must come forward with evidence of the cause of pneumoconiosis or death, as the case may be. We certainly cannot say that the presumptions, by excluding other relevant factors, operate in a "purely arbitrary" manner.

[428 U.S. at 29–30, 96 S.Ct. at 2898–2899. Emphasis supplied.]

It appears to us that these excerpts from *Turner-Elkhorn* repel both wings of respondents' due process attack. In *Turner-Elkhorn,* the operators focused their attack on the "rationality of the presumptions' bases in duration of employment." 428 U.S. at 28, 96 S.Ct. at 2898. The Court sustained the presumptions on the basis of duration of employment alone "to the exclusion of the degree of dust exposure and other relevant factors." 428 U.S. at 29–30, 96 S.Ct. at 2898–2899. Respondents' surface-underground distinction contention is nothing more than a semantic variant of the argument based on the degree of coal dust exposure. That argument was clearly rejected by the Supreme Court, *id.,* and we are likewise similarly disposed, if not actively constrained, to follow in rejecting this challenge to the presumption contained in § 921(c)(5).

In view of our disposition of the constitutional challenge to the § 921(c)(5) presumption, we do not reach the issue of the board's power to rule on the constitutionality of those statutes it is charged with administering. That issue is mooted by our upholding the statutory provision in question, the same result reached by the board in its analysis. Had the board struck down the provision, and had this court disagreed, the matter would be squarely presented and

the court would no doubt have had to address the issue. Those facts, however, do not obtain and we express no opinion, *sub silentio,* or otherwise on the question.

### III

Turning to the merits of the case, claimant's principal contention is that the board's interpretation of 20 C.F.R. § 727.-204(d) was legally erroneous. It will be recalled that § 727.204(d) established limits upon the evidence that sufficed to rebut the § 921(c)(5) presumption. The regulation states that the following evidence "alone" is insufficient for rebuttal: (1) evidence that a deceased miner was employed in a coal mine at death; (2) evidence pertaining to a deceased miner's level of earnings prior to death; (3) a chest X-ray interpreted as negative for the existence of pneumoconiosis; and (4) a death certificate which fails to mention pneumoconiosis. Claimant urges a construction of "alone" as allowing for rebuttal no evidence of the four types listed above, and, therefore, as requiring something other and different. Respondents, on the other hand, contend that "alone" means that evidence meeting only one category is insufficient, but that proof of two or more are competent and can suffice. This precise issue was determined by this court in *Freeman v. Director, Office of Workers' Compensation Programs, et al.,* 687 F.2d 214 (1982) in favor of the board view advocated by respondents. Claimant cannot prevail on this point. Next, claimant contends that her property right in entitlement to benefits pursuant to § 921(c)(5) was forfeited without due process because the board retroactively changed its official interpretation of § 727.204(d) as contained in the *Black Lung Desk Book.* The passage relied on by claimant states:

Section 727.204(c) provides specific grounds for rebuttal of the presumption. *Note* that Section 727.204(d) excludes four types of evidence as proof of the absence of total or partial disability.

[*Id.* at XII–16.]

The *Black Lung Desk Book* is an official reference manual published by the board,

and as stated in its preface, "to assist the Benefits Review Board and its staff in deciding cases arising under the Federal Coal Mine Health and Safety Act of 1969, as amended."

█ Claimant states that she relied on this manual in preparing her case, and as a consequence, did not prepare to meet the evidence advanced by the employer which fell into any of the four categories. Respondents do not contest this reliance. This case is the only one of the group heard on March 30, 1982, in which such a contention was made. It appears to the court that claimant's construction of the passage quoted from the Desk Book, if not the only one possible, was reasonable. Claimant is at least entitled to a remand to allow her to put on evidence she says she would have offered that would tend to negate the rebuttal evidence.

We have already held that the Desk Book provision relied on is of no direct benefit to the court because it is ambiguous. *Freeman v. Director, supra.* But that was in a case where the element of reliance by the claimant was not a factor. Here it is. Considering the normal rule of construction of contra proferentem, the government agency putting forward an ambiguous pronouncement has some duty to protect a party who actually and reasonably relies on his interpretation of it, even if it is not the only one possible. Unfortunately, in recent years, legal problems from erroneous or ambiguous statements in government handbooks or manuals not rising to the dignity of a regulation, are legion. Numerous cases are cited and illustrations of the problems appear in *Fiorentino v. United States,* 221 Ct.Cl. 545, 607 F.2d 963 (1979), *cert. denied,* 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980). If such statements go clearly counter to applicable statutory restrictions, as in *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), courts may be unable to protect the innocent relying party. There is, however, no issue here of lack of authority to make the statements claimant relies on. The interpretation given by claimant has support in the use of the word "excludes" with no qualification that the evidence to be excluded is nevertheless admissible in combination with other evidence.

Respondents argue that the Desk Book is a purely internal document intended for use only by the board and its staff and in the Department of Labor. There is, however, considerable doubt cast on this characterization of the Desk Book where both sides acknowledge that it was freely available on request and indeed disseminated outside the Department of Labor by the board without any resort to Freedom of Information Act procedures. Furthermore, it cannot be said that the claimant was not justified in relying on the Desk Book where that document was published by the board itself, interpreting the entire statutory and regulatory framework under the Act. The board's interpretation of the statutes and regulations it is charged with administering, as published in the Desk Book, may be availed of by claimants who have specifically relied on the Desk Book, even if such interpretations are not binding on the board or helpful to this court on a direct reference.

The court is therefore of the opinion that the decision of the board should be vacated and a remand ordered for a limited proceeding to permit claimant an opportunity to adduce evidence that would meet respondents' rebuttal evidence of the types listed at 20 C.F.R. § 727.204(d). We note that our disposition of this case does not affect our decision in *Freeman.* We do not sustain the interpretation of 20 C.F.R. § 727.204(d) as advanced by the *Black Lung Desk Book.*

In view of our order remanding the case, we express no opinion on the other contentions raised by the parties.

For the foregoing reasons, the board's decision is vacated and the case is ordered remanded for proceedings not inconsistent with this opinion.