Frank J. CAROZZA, Petitioner,

v.

UNITED STATES STEEL CORPORATION and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 83–3231.

United States Court of Appeals, Third Circuit.

Argued Jan. 23, 1984.

Decided Feb. 10, 1984.

J. Scott Leckie (argued), Yablonski, King, Costello & Leckie, Washington, Pa., for petitioner, Frank J. Carozza.

James D. Strader (argued), Pittsburgh, Pa., for respondent, U.S. Steel Corp.

Bonnie J. Brownell, Atty. (argued), Francis X. Lilly, Deputy Sol. of Labor, Donald S. Shire, Associate Sol., Elaine D. Kaplan, Atty., J. Michael O'Neill, Counsel for Appellate Litigation, U.S. Dept. of Labor, Washington, D.C., for Director, Office of Workers' Compensation Programs.

Before GIBBONS and BECKER, Circuit Judges and ATKINS, District Judge.*

* Hon. C. Clyde Atkins, United States District Judge for the Southern District of Florida, sitting by designation.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Frank J. Carozza, a former coal miner, petitions for review of a final decision of the Benefits Review Board, United States Department of Labor, reversing a decision of an administrative law judge awarding him benefits for disability resulting from pneumoconiosis. We have jurisdiction under 33 U.S.C. § 921(c) (1976). The Director, Office of Workers' Compensation Programs, United States Department of Labor, supports Carozza's petition. His last employer, United States Steel Corporation, opposes it. We grant the petition for review and direct the payment of benefits in accordance with the decision of the administrative law judge.

### I.

Carozza has worked in coal mines for thirty years. In June of 1978 he suffered a heart attack and was hospitalized for fifteen days. In April of 1979 he underwent a cardiac catheterization and was diagnosed as having coronary artery disease. He was examined in 1979 by three physicians. On May 4, Dr. Maude Vance, based on a negative x-ray, found no evidence of pneumoconiosis or pulmonary disease. On August 31, Dr. John Shively found Carozza to be totally disabled from severe cardiovascular disease, but stated that there was equivocal radiographical evidence of pneumoconiosis but no evidence of significant occupational lung disease, impairment, or disability. On September 14, Dr. J.D. Silverman diagnosed Carozza as being disabled primarily from his severe heart attack with valvular complications. He noted, as well, that pneumoconiosis contributed in part to Carozza's disability.

The Department of Labor, on October 26, 1979, certified Carozza as eligible for benefits. United States Steel Corporation refused to pay and requested a hearing. On March 24, 1980 Dr. Silverman conducted a second examination, and reported that Car-

ozza was totally disabled from anthracosilicosis. After a hearing, the administrative law judge ordered the payment of benefits.

Noting that Carozza's thirty years of coal mine employment gave rise to the interim presumption in 20 C.F.R. § 727.203 (1983) of total disability from pneumoconiosis, he concluded that the medical evidence requirement of that regulation had been satisfied. That evidence comprised the x-rays taken by Drs. Shively and Silverman showing simple pneumoconiosis, and the March 24, 1980 opinion of Dr. Silverman that Carozza suffers from a totally disabling respiratory or pulmonary impairment. *See* 20 C.F.R. §§ 727.203(a)(1), (4) (1983). Once the interim presumption came into operation United States Steel Corporation was required to rebut it by "evidence establish[ing] that the total disability or death of the miner did not arise *in whole or in part* out of coal mine employment." 20 C.F.R. § 727.203(b)(3) (1983) (emphasis supplied). The administrative law judge observed:

> [T]he primary source of Claimant's total disability is his cardiac disease.... But this does not prove that his present total disability is unrelated to his pneumoconiosis. All the pulmonary function tests showed some degree of pulmonary impairment. In addition, Claimant testified that he had breathing problems before his heart attack and that he continues to have trouble breathing. Claimant has pneumoconiosis. Employer has a difficult burden in rebutting the interim presumption under § 727.203(b)(3). I find that it has not done so. Dr. Shively's report and the other medical evidence do not establish to my satisfaction that Claimant's total disability did not arise at *least partially* out of his coal mine employment.

App. at 4a–4 (emphasis supplied). United States Steel appealed to the Benefits Review Board, which reversed. The Board produced three opinions. Judge Ramsey relied on the Board's decisions in *Jones v. The New River Company,* 3 BLR 1–199 (1981), and *Van Nest v. Consolidation Coal Company,* 3 BLR 1–526 (1981), *rev'd mem.,* 705 F.2d 460 (6th Cir.1982), holding that the language "in whole or in part" in 20 C.F.R.

§ 727.203(b)(3) (1983) was inconsistent with the governing statute and beyond the rulemaking authority of the Secretary. Judge Miller, who had dissented from that holding in *Van Nest,* concurred solely on the ground that *Jones* was now a precedent which should be followed by the Board for the sake of consistency. He would otherwise have affirmed. Judge Kalaris approved the Board's *Jones* and *Van Nest* holdings, but would have remanded to the administrative law judge for further fact finding since the facts were found under an erroneous legal standard. This petition for review followed.

## II.

The opinions of the Board members make clear that had they considered 20 C.F.R. § 727.203(b)(3) to be a valid regulation they would have affirmed the order requiring payment of benefits. Thus the petition for review should be granted, and that order reinstated, if this court so concludes. Before addressing that question, however, we address the preliminary objection, advanced by the petitioner and the Director, Office of Workers' Compensation Programs, that the Benefits Review Board lacks statutory authority to consider the validity of regulations issued by the Secretary.

## A.

The Board acts on the authority of 33 U.S.C. § 921(b)(3) (1976), which provides:

> The Board shall be authorized to hear and determine appeals raising a substantial *question of law* or fact taken by any party in interest from decisions with respect to claims of employees under this chapter and the extensions thereof. (emphasis supplied).

The statutory language is clear. Congress authorized the Board to decide questions of law, and consistency of a regulation with the underlying statutory scheme is such a question. The Board was created in 1972 to perform the functions formerly performed by the United States District Courts under section 21 of the Longshoremen's and Har-

bor Workers' Compensation Act, ch. 509, 44 Stat. 1436 (1927), *as amended,* 33 U.S.C. § 921(b) (1976). *See Nacirema Operating Co., Inc. v. Benefits Review Bd.,* 538 F.2d 73, 75 (3d Cir.1976). The district courts had authority to decide questions of law, and that authority was transferred.

The Director of the Office of Workers' Compensation Programs, United States Department of Labor, urges that observations made in *Kalaris v. Donovan,* 697 F.2d 376 (D.C.Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 3088, 77 L.Ed.2d 1451 (1983) compel the conclusion that the Benefits Review Board lacks statutory authority to invalidate a regulation promulgated by the Secretary of Labor. It notes that the Board's members are appointed by the Secretary and serve at his discretion, *see Kalaris,* 697 F.2d at 381, 390, and that the Board lacks authority to issue even its own procedural regulations absent approval by the Under Secretary of Labor.

*Kalaris* does not compel the conclusion suggested by the Department of Labor. The Department's argument, though not without force, rests on the flawed syllogism that, because Congress vested the Secretary of Labor with the ultimate power to curb Board authority, either by firing dissidents or by legitimately regulating Board procedures, Congress thus did not intend for Board members to exercise their statutory powers—including the power to decide questions of law—in the interim. The question is not, however, whether the Secretary of Labor can overcome Board rulings he finds improper—he can, either by firing the responsible Board members, and sometimes by supporting appeals of such decision made to the circuit courts. But the availability of these tools to curb exercises of discretion thought inappropriate by the Secretary of Labor does not, absent further indications lacking here, divest the Benefits Review Board of its statutory authority to decide issues of law.

■ Carozza and the Office of Workers' Compensation Programs urge, however, that 33 U.S.C. § 921(b)(3) (1976) should not be construed as authorizing a non-article III

tribunal, appointed by the Secretary, to exercise the authority to decide questions of law. The Board does not have authority to decide questions of law finally, however, for our review of such questions is plenary. *See Director, Office of Workers' Compensation Programs v. O'Keefe,* 545 F.2d 337, 343 (3d Cir.1976), *disapproved on other grounds in Director, Office of Workers' Compensation Programs v. Rasmussen,* 440 U.S. 29, 99 S.Ct. 903, 59 L.Ed.2d 122 (1979). Its relationship to this court is that of an adjunct tribunal. It has been clear since *Crowell v. Benson,* 285 U.S. 22, 50, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932), that Congress can provide for such tribunals for the adjudication of congressionally created rights, at least if Article III courts retain the essential attributes of judicial power. The *Crowell v. Benson* holding in this respect was reaffirmed in *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 78, 102 S.Ct. 2858, 2875, 73 L.Ed.2d 598 (1982). The black lung disability benefits which Carozza seeks are congressionally created rights, and 33 U.S.C. § 921(c) (1976) vests in this Article III court sufficient control over the Board to satisfy the *Crowell v. Benson* test. We retain the essential attributes of judicial power. Thus we reject the contention of Carozza and the Office of Workers' Compensation Programs that the Board may not, in the first instance, decide the legal question of the validity of a regulation.

### B.

■ Such a determination is, however, subject to plenary review here, and thus we turn to the question whether 20 C.F.R. § 727.203(b)(3) is a valid regulation.

■ In the Board's *Jones* opinion the majority held that the "in whole or in part" language is inconsistent with 30 U.S.C. §§ 901(a) and 902(f)(1) (Supp. V 1981), which require payment of benefits only for total disability due to pneumoconiosis. The Board majority reasoned that the regulation resulted in the payment of benefits for less than total disability from that lung condition. But as Judge Miller points out in his dissent in *Van Nest v. Consolidation*

*Coal Company,* 3 BLR at 1–538 (1981), the majority has misread the regulation, for [w]hen viewed in proper context, "arises in whole or in part" can only mean *arises in whole* or *arises in part.* It is simply without support to infer, as do my colleagues, that "in part" applies to disability rather than causation. . . . The "in part" language plainly refers to, and modifies, causation (arising out of coal mine employment), not the extent of disability.

Judge Miller's reading of the regulation is clearly correct. It does not permit the award of benefits for partial disability, but only for total disability of which pneumoconiosis is a contributing cause.

The statute provides that the term "total disability" has the meaning given it by regulation. 30 U.S.C. § 902(f)(1) (Supp. V 1981). The criteria adopted by regulation "shall not be more restrictive than the criteria applicable to a claim filed on June 30, 1973." 30 U.S.C. § 902(f)(2) (Supp. V 1981). The challenged regulation is arguably less restrictive than that in effect prior to June 30, 1973, but this possibility appears to have been contemplated by Congress. *See* H.Conf.Rep. No. 95–864, 95th Cong., 2d Sess. 16–17, *reprinted in* 1978 U.S.Code Cong. & Ad.News, 308, 309–10; *see also* H.R.Rep. No. 95–151, 95th Cong., 2d Sess. 5–10, 78, 86, *reprinted in* 1978 U.S.Code Cong. & Ad.News, 237, 241–46, 290–91, 299. Moreover, 20 C.F.R. § 727.203(b)(3) is consistent with the presumption embodied in 30 U.S.C. § 921(c)(4) (Supp. V 1981). That section provides that the Secretary can rebut the presumption of disability arising from 15 years of coal mine employment and evidence of totally disabling respiratory or pulmonary impairment only by establishing that "(A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." The quoted language suggests that Congress did not intend to exclude benefits for total disability resulting from multiple causes, one of which is pneumoconiosis. The statute has been so interpreted. *Rose v. Clinchfield Coal Co.,* 614 F.2d 936, 939 (4th Cir.1980); *Clinchfield Coal Co. v. Fleming,* 606 F.2d 441, 442 (4th Cir.1979).[1] The interpretation, in and of itself, is not embodied in 20 C.F.R. § 727.-203(b)(3). However, that section recognizes that pneumoconiosis may contribute to total disability by aggravating such conditions as heart disease or lung cancer. Accordingly, the interpretation is consistent with the remedial purposes of Congress and well within the rulemaking authority conferred on the Secretary.

### III.

Since the sole basis relied on by the Board in setting aside the administrative law judge's order was its erroneous view that 20 C.F.R. § 727.203(b)(3) is inconsistent with the statute, the petition for review will be granted and the case remanded to the Board with instructions to reinstate that order.

---

1. It is also helpful to examine the legal background against which the statute in question should be viewed. Under traditional workmen's compensation law, compensation is proper where a work-related injury aggravates a pre-existing or non-work-related condition to the point of compensable disability, even if the work-related condition in and of itself is not compensable. *See Wheatley v. Adler,* 407 F.2d 307 (D.C.Cir.1968) (en banc); 1 A. Larson, *The Law of Workmen's Compensation* § 12.20 (1982). The Senate Report accompanying the bill that formed the basis for the Black Lung Benefits Act of 1977 was cognizant of this background and indicated no dissatisfaction.

"It is also intended that traditional workers' compensation principles such as those, for example, which permit a finding of eligibility where the totally disabling condition was significantly related to or aggravated by the occupational exposure be included in the regulations." S.Rep. No. 95–209, 95th Cong. 1st Sess. 13–14 (1977). While this statement in a Senate Report cannot be treated as determinative, it nonetheless constitutes some incremental authority for the Secretary's implementation of the statute.