ALABAMA BY–PRODUCTS
CORPORATION,
Petitioner,

v.

Charles B. KILLINGSWORTH, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 83–7176.

United States Court of Appeals,
Eleventh Circuit.

June 8, 1984.

H. Thomas Wells, Jr., and A. Inge Seiden, III, Birmingham, Ala., for petitioner.

James Allen Sydnor, Jr., and Frederick T. Kuykendall, III, Birmingham, Ala., for Killingsworth.

Roger M. Siegel, Dept. of Labor, Washington, D.C., for Director, OWCP.

Mary-Helen Mautner and Barbara J. Johnson, U.S. Dept. of Labor, SOL, Sp. Appellate and Supreme Court Litigation Div., Washington, D.C., for Secretary, Dept. of Labor.

Before KRAVITCH and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

Alabama By-Products Corporation ("ABC") petitions for review of the Benefits Review Board's (the "Board") decision awarding benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended [1] (the "Act"), 30 U.S.C.

---

**1.** Title IV of the Act has been amended three times since 1969: first by the Black Lung Benefits Act of 1972, Pub.L. No. 92–303, 86 Stat. 150; then by the Black Lung Benefits Reform Act of 1977, Pub.L. No. 95–239, 92 Stat. 95; and most recently by the Black Lung Benefits Amendments of 1981, Pub.L. No. 97–119, 95 Stat. 1635. Prior to the 1972 amendments, a large number of claims were denied under the standards of the Social Security Administration ("SSA"). The 1972 amendments, which were implemented as interim presumptions at 20 C.F.R. § 410.490, were passed to liberalize eligibility requirements. The 1972 amendments also shifted responsibility for Part C claims (claims filed after December 31, 1973) to the Department of Labor ("DOL"). The DOL's claims approval rate, however, was significantly lower than that of the SSA because the SSA's liberal interim presump-

tion was inapplicable to DOL cases. Congress responded with the Black Lung Benefits Reform Act of 1977, which was enacted to expand coverage and to liberalize claim awards. The Secretary of Labor was authorized to adopt new criteria which were to be no more restrictive than the SSA's interim presumption. The Secretary promulgated interim criteria at 20 C.F.R. § 727.200 *et seq.* including the presumption at issue in this case, at § 727.203. In addition, financial responsibility for Part C claims passed from the federal government, which pays Part B claims, to the employer or its insurance carrier, unless an appointed state workers' compensation program exists. *See Underhill v. Peabody Coal Co.,* 687 F.2d 217, 219–20 (7th Cir.1982), for a discussion of the Act's history. *See generally,* Solomons, A Critical Analysis of the Legislative History Surrounding the Black Lung In-

§ 901 *et seq.*, to Charles B. Killingsworth[2], a former employee of the corporation. We affirm the award.

# I. BACKGROUND

Killingsworth worked as a coal miner for thirty-nine years, the first thirty-five years underground and the last four on the surface as a shop electrician. He voluntarily retired in 1978 at age sixty-two. Killingsworth filed a claim for benefits under the Act on May 22, 1978 for alleged total disability due to pneumoconiosis. Pneumoconiosis, which is commonly known as "black lung," is a dust disease of the lungs arising from coal mine employment.[3] The Department of Labor approved the claim, holding the coal mine operator, ABC, liable. ABC contested its potential liability and a formal hearing was held on February 11, 1980 before an Administrative Law Judge (the "ALJ"), who awarded benefits to Killingsworth.

Before the ALJ, Killingsworth testified that he retired because he did not feel he was doing a good job for his employer due to his shortness of breath and some problems with his knees. The medical evidence presented to the ALJ included findings from three doctors who examined Killingsworth. The first was Dr. A. David Russakoff for the Department of Labor. Dr. Russakoff, who is a "B" reader,[4] stated in a written medical report dated February 19, 1979 that Killingsworth had minimal radiographic evidence of pneumoconiosis, but that his ventilatory function tests were normal and that the pneumoconiosis should not be the cause of any significant impairment in physical activity. Dr. Russakoff found it conceivable that hypertension could be a factor contributing to Killingsworth's breathing difficulties. During his deposition, Dr. Russakoff stated that he did not believe that the minimal amount of pneumoconiosis present was disabling.

Killingsworth was next examined by his doctor, Seaburt Goodman, on April 9, 1979. In his medical report, Dr. Goodman diagnosed emphysema and simple pneumoconiosis. He reported that there was a "prolongation of the expiratory phase of respiration with only fair air exchange." In his opinion, Killingsworth was approximately 15 to 20% disabled due to pneumoconiosis. On May 30, 1979, Dr. Edgar G. Givhan examined Killingsworth at ABC's request. In his written report, Dr. Givhan stated that the x-rays did not indicate pneumoconiosis, so he could not ascribe any disability due to pneumoconiosis. Dr. Givhan reported that Killingsworth's shortness of breath was more likely caused by arterial hypertension than by pneumoconiosis.

The ALJ found that the evidence was sufficient to invoke the presumption of total disability due to pneumoconiosis under 20 C.F.R. § 727.203(a)(1). The ALJ then determined that ABC had failed to rebut the presumption under 20 C.F.R. §§ 727.-203(b)(2) and (b)(3). On appeal, ABC challenges the constitutionality of the presumption at section 727.203(a), the ALJ's finding that the employer bears the burden of proof on rebuttal, and the ALJ's finding that ABC failed to rebut the presumption under sections 727.203(b)(2) and (b)(3).

# II. DISCUSSION

A. *The Nature of Employer's Burden*

We first address ABC's contention that the ALJ improperly construed the effect of the presumption at 20 C.F.R. § 727.-203(a)(1)[5] by giving it independent eviden-

terim Presumption and a Survey of Its Unresolved Issues, 83 W.Va.L.Rev. 869 (1981).

2. Before this Court, the Director of the Office of Workers' Compensation Programs (the "Director") also has submitted a brief as respondent, adopting Killingsworth's position.

3. Pneumoconiosis is customarily classified as "simple" or "complicated." Simple is caused by dust alone and is identified by small opacities in the lung fields visible on a chest x-ray. Complicated, which is generally more serious, involves progressive massive fibrosis as a complex reac-

tion to dust and other factors. *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 7, 96 S.Ct. 2882, 2888, 49 L.Ed.2d 752 (1976).

4. Physicians can be certified as "A" (first) or "B" (final) readers according to their proficiency in interpreting chest x-rays of coal miners for evidence of pneumoconiosis. "B" is the higher classification of proficiency.

5. 20 C.F.R. § 727.203(a)(1) provides:

 (a) *Establishing interim presumption.* A miner who engaged in coal mine employment

tiary weight and by finding that the presumption, once invoked, shifted the burden of proof to the employer. ABC claims that under the "bursting bubble" theory of presumptions, once the employer offers some rebuttal evidence, the presumption falls out of the case. In other words, ABC asserts that to rebut the presumption, the employer has only the burden of production, not the burden of persuasion. According to ABC, the burden of proof or persuasion remains with the claimant. We disagree with ABC's analysis.

██ The burden of persuasion may be judicially or legislatively assigned to a specific party to establish a particular fact. *NLRB v. Transportation Management Corp.*, 462 U.S. 393, ——, n. 7, 103 S.Ct. 2469, 2475 n. 7, 76 L.Ed.2d 667 (1983). The plain meaning of the regulatory language of 20 C.F.R. § 727.203(b) [6] demonstrates that the burden of persuasion shifts to the employer on rebuttal. Under section 727.-203(b), the employer is required to "establish" the elements of rebuttal. "Establish" is clearly synonymous with "prove." Furthermore, under section 727.203(b), the factfinder must consider "all relevant medical evidence" to determine if the presumption has been rebutted, thus indicating that the factfinder must consider evidence introduced by both sides and that the operator must persuade the factfinder. Our holding is in accord with that of other circuits that have construed section 727.203. *See Consolidation Coal Co. v. Smith*, 699 F.2d 446, 449 (8th Cir.1983); *Hampton v. United States Department of Labor Benefits Review Board*, 678 F.2d 506, 508 (4th Cir. 1982) (employer's burden is to effectively

rule out the causal relationship between disability and coal mine employment). *But see Underhill v. Peabody Coal Co.*, 687 F.2d 217, 222 (7th Cir.1982) ("As with any presumption, the effect is to shift the burden of going forward to the opposing party"). Moreover, the Board has ruled that the operator bears the burden of persuasion. *McCluskey v. Zeigler Coal Co.*, 2 BLR 1–1248, 1272–73 (1981).

Nevertheless, ABC argues that *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), supports its position. In *Turner Elkhorn*, the Supreme Court stated that the presumptions under sections 411(c)(1) and (2) of the Act, 30 U.S.C. § 921(c)(1) and (2), are "explicitly rebuttable, and the effect of each is simply to shift the burden of going forward with evidence from the claimant to the operator." 428 U.S. at 27. The applicable presumptions in *Turner Elkhorn*, however, differ significantly from the presumption at issue in this case. In *Turner Elkhorn*, the statutory presumptions under sections 411(c)(1) and (2) are described merely as "rebuttable;" the statute does not require the rebutting party to "establish" particular facts.

By comparison, in applying section 411(c)(4) of the Act, 30 U.S.C. § 921(c)(4), which requires the party opposing the claim to "establish" certain facts in rebuttal, the Fifth Circuit has required the rebutting party to prove by a preponderance of evidence that the claimant is not disabled. *United States Steel Corp. v. Gray*, 588 F.2d 1022, 1028 (5th Cir.1979). *Accord*

---

for at least 10 years will be presumed to be totally disabled due to pneumoconiosis ... if one of the following medical requirements is met:

(1) A chest roentgenogram (x-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428 of this title)....

**6.** 20 C.F.R. § 727.203(b) provides:

(b) *Rebuttal of interim presumption.*
In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work

or comparable and gainful work (see § 410.-412(a)(1) of this title); or
(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or
(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.

*Rose v. Clinchfield Coal Co.*, 614 F.2d 936, 939 (4th Cir.1980) (the operator must "effectively . . . rule out" the relationship between the miner's cancer and pneumoconiosis or between his cancer and his coal mine employment in order to prevail); *Ohler v. Secretary of Health, Education and Welfare*, 583 F.2d 501, 506 (10th Cir.1978) ("once the existence of a disabling respiratory impairment is established the burden shifts to the Secretary to prove that it is not pneumoconiosis"). *But see Prokes v. Mathews*, 559 F.2d 1057, 1060 (6th Cir.1977) (operator bears only a burden of production in rebuttal).

■ ABC also argues that Rule 301 of the Federal Rules of Evidence[7] applies. Rule 301, however, controls only if an act of Congress has not provided otherwise. Here, the regulation specifically states that the operator must "establish" the rebutting factor and therefore, Rule 301 does not apply.

We conclude that the burden of persuasion or proof shifts to the operator on rebuttal. Therefore, the ALJ acted properly in the case at hand.

7. Rule 301 of the Federal Rules of Evidence provides:

> Rule 301. Presumptions in General in Civil Actions and Proceedings
>
> In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

8. ABC also claims that the ALJ's opinion does not satisfy the Administrative Procedure Act which requires that every adjudicatory decision be accompanied by a statement of "findings and conclusions and the reason or basis therefor, on all the material issues of fact, law or discretion presented on the record...." 5 U.S.C. § 557(c)(3)(A). One Administrative Appeals Judge dissented from the Board's decision on this ground. This Court, however, has held that while an agency must explain the rationale for its decision, "an agency determination is generally upheld if its basis can be discerned from

**B. Rebuttal Under Sections 727.-203(b)(2) and (b)(3)**

■ ABC claims that the ALJ erred in finding that ABC failed to rebut the presumption of total disability under 20 C.F.R. § 727.203(b)(2).[8] Section 727.203(b)(2) provides that the presumption of total disability is rebutted if "[i]n light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work."

■ In reviewing agency action, this Court is limited to a determination of whether the findings were supported by "substantial evidence," which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Home Health Services of the U.S., Inc. v. Schweiker*, 683 F.2d 353, 356 (11th Cir.1982). The ALJ's decision shows that he considered all relevant evidence.[9] He did not disregard the opinions of Dr. Givhan and Dr. Russakoff but chose to give greater weight to the lay testimony of Killingsworth, the clinical evidence of the disease, and Dr. Goodman's report. We cannot substitute our judgment for that of the agency or reverse the findings on the basis that we might have decided the case

the opinion." *Deaton, Inc. v. I.C.C.*, 693 F.2d 128, 131 (11th Cir.1982). We hold that the ALJ sufficiently stated his findings and conclusions and that the basis for the decision can be discerned from the opinion.

9. The ALJ stated:

> Based upon the Claimant's testimony as to his shortness of breath and ability to perform his usual coal mine work, the showing of reduced physical requirements for the last four years of his coal mine employment, based upon the presumption and the existence of simple pneumoconiosis, and based upon the conclusions reached by Dr. Goodman it is determined that notwithstanding the opinions of Dr. Givhan and Dr. Russakoff, the Claimant is physically unable to do his regular and usual coal mine work by reason of a lack of physical abilities based upon his pulmonary impairment. There has been no evidence whatsoever submitted that the Claimant can do comparable and gainful work at any employment which is available to him in the community of his residence and it is therefore concluded that the presumption has not been rebutted under this section.

differently. *Home Health Services of the U.S., Inc. v. Schweiker,* 683 F.2d at 356–57. Therefore, we hold that the ALJ did not err in finding that ABC had not rebutted the presumption under section 727.203(b)(2).

 ABC also claims that the ALJ erred in finding that ABC failed to rebut the presumption of total disability under 20 C.F.R. § 727.203(b)(3). Section 727.-203(b)(3) provides that the presumption of total disability is rebutted if "[t]he evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment." ABC contends that the ALJ failed to properly consider the evidence relevant to section (b)(3) rebuttal.[10] The ALJ rejected the medical opinions of Drs. Russakoff and Givhan in favor of that offered by Dr. Goodman. As stated above, we lack the power to substitute our judgment for that of the administrative agency. *Home Health Services of the U.S., Inc. v. Schweiker,* 683 F.2d at 356. Thus, we do not reverse the ALJ's finding that ABC failed to rebut the presumption of total disability under subsection (b)(3).

## C. *Constitutionality of the Rebuttable Presumption*

 Having affirmed the award of benefits on other grounds, we must address ABC's contention that the presumption set out in the regulations at 20 C.F.R. § 727.-203(a)(1) is unconstitutional under the due process clause of the fifth amendment. Section 727.203(a)(1) provides that a miner who has engaged in coal mine employment for at least ten years is presumed to be totally disabled due to pneumoconiosis arising out of that employment if the miner also introduces a chest x-ray establishing the existence of pneumoconiosis. We hold that the presumption at section 727.-203(a)(1) is constitutional.

The parties do not cite and we have not found any court opinions deciding the constitutionality of the presumption at 20 C.F.R. § 727.203. Courts have considered the constitutionality of other sections of the Act. In *Battaglia v. Peabody Coal Co.,* 690 F.2d 106, 110–13 (7th Cir.1980), and *United States Steel Corp. v. Oravetz,* 686 F.2d 197, 201–02 (3d Cir.1982), the courts upheld the constitutionality of section 411(c)(5), 30 U.S.C. § 921(c)(5), which creates the presumption that a miner who dies on or before March 1, 1978 and who was employed for 25 years or more in one or more coal mines before June 30, 1971 is either partially or totally disabled due to pneumoconiosis at the time of death.

The Supreme Court has set forth the standard for judging the validity of presumptions in *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). In *Turner Elkhorn,* the Court upheld against constitutional attack statutory presumptions arising under section 411(c)(1)–(4) of the Black Lung Benefits Act of 1972, 30 U.S.C. § 921(c)(1)–(4).[11]

**10.** In addition, ABC claims that the ALJ failed to apply the proper legal standard because the ALJ stated that ABC had not rebutted under (b)(3) since "[t]here has been no evidence submitted that establishes any other cause [other than employment] for the existing pneumoconiosis." We agree with ABC that under (b)(3), the ALJ should have discussed alternative causes for the existing *disability* rather than for the existing *pneumoconiosis.* We hold, however, that this oversight is harmless because the ALJ made the requisite findings of fact in his section 727.-203(b)(2) discussion. The ALJ need not explicitly reiterate the (b)(3) evidence, for the court "will uphold an agency's decision of less than ideal clarity if the agency's path may reasonably be discerned or if failure to explain every step in the reasoning process could have made no difference in the outcome." *Markus v. Old Ben Coal Co.,* 712 F.2d 322, 327 (7th Cir.1983).

ABC also claims that the ALJ should have excluded the phrase "in whole or in part" in considering rebuttal under section 727.203(b)(3) because, otherwise, the regulation would permit awards to claimants who are only partially disabled from pneumoconiosis. *See Jones v. The New River Co.,* 3 BLR 1–199, 207–09 (1981). In *Jones,* the Board held that in order to rebut the presumption under (b)(3), an employer must show that the pneumoconiosis from which the miner suffers is not in and of itself totally disabling. 3 BLR at 1–209. In *Carozza v. United States Steel Corp.,* 727 F.2d 74 (3d Cir.1984), however, the court held that the (b)(3) regulation "does not permit the award of benefits for partial disability, but only for total disability of which pneumoconiosis is a contributing cause." We agree with the position of *Carozza* and thus hold that ABC's argument is without merit.

**11.** Section 411(c)(1) raises a rebuttable presumption that a miner's pneumoconiosis arose out of his employment if the miner suffers from

The Court first stressed that "legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislation has acted in an arbitrary and irrational way." 428 U.S. at 15, 96 S.Ct. at 2892. According to the *Turner Elkhorn* Court, a legislative presumption is constitutional if there is some rational connection between the fact proved and the ultimate fact presumed, and the inference of one fact from proof of another is not so unreasonable as to be a purely arbitrary mandate. 428 U.S. at 28, 96 S.Ct. at 2898. Moreover, the Court recognized that the determination of rationality is highly empirical and thus, " 'significant weight should be accorded the capacity of Congress to amass the stuff of actual experience and cull conclusions from it.' " 428 U.S. at 28, 96 S.Ct. at 2898 (quoting *United States v. Gainey*, 380 U.S. 63, 67, 85 S.Ct. 754, 757, 13 L.Ed.2d 658 (1965)). Therefore, under *Turner Elkhorn*, we must determine whether the facts proved, that is, ten years of coal mine employment and a chest x-ray establishing pneumoconiosis, and the presumed fact, that is, total disability, are rationally connected.

As its first premise, ABC argues that there is no rational connection between the presumption of total disability and *either* ten years of coal mine employment *or* x-ray evidence of simple pneumoconiosis. We disagree that duration of employment and evidence of pneumoconiosis are alternative requirements that should be considered separately in determining whether the presumption is constitutional. The language of section 727.203(a) clearly indicates that duration of employment and evidence of

pneumoconiosis are conjunctive requirements that must be examined together. In other words, mine employment for ten years does not alone activate the presumption; the miner must also show chest x-rays establishing pneumoconiosis.

ABC claims that there is no link between the number of years of coal mining and total disability. As ABC points out, Congress heard some evidence indicating that there is no clear causal relationship between duration of employment and the incidence of total disability due to pneumoconiosis. *See* S.Rep. No. 209, 95th Cong., 1st Sess. 17 (1977). Additionally, ABC claims that the connection between x-ray evidence of simple pneumoconiosis and the presumption of total disability is insufficient because the x-ray does not measure the presence or extent of pulmonary impairment. ABC cites evidence in the legislative record questioning the viability of the chest x-ray in determining impairment in function. *See* Black Lung Benefits Reform Act, 1976: Hearings on S. 3183 before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 94th Cong., 2d Sess. 681 (1976); Black Lung Legislation, 1971–72: Hearings on S. 2675 and S. 2289 before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 92nd Cong., 1st and 2d Sess. 42 (1972); Black Lung Benefits: Hearing on H.R. 18, H.R. 42, H.R. 43, and H.R. 5702 before the General Subcommittee on Labor of the House Committee on Education and Labor, 92d Cong., 1st Sess. 101 (1971). Finally, ABC argues that the evidence in the legislative record suggests only that simple pneumoconiosis can cause some functional impairment, particularly in its later stages, but not that simple pneumoconiosis per se

pneumoconiosis and was employed for ten or more years in a coal mine or mines. Section 411(c)(2) raises a rebuttable presumption that a miner's death was due to pneumoconiosis if the miner was employed for ten or more years in a coal mine or mines and died from a respiratory disease. Section 411(c)(3) raises an irrebuttable presumption that a miner is totally disabled as a result of pneumoconiosis or has died as a result of or while disabled by pneumoconiosis if the miner is clinically shown to have "complicated"

pneumoconiosis. Section 411(c)(4) raises a rebuttable presumption that a miner is totally disabled as a result of pneumoconiosis or has died as a result of or while disabled by pneumoconiosis if the miner worked fifteen or more years in an underground coal mine, if his chest x-ray is interpreted as negative for complicated pneumoconiosis, and if other evidence demonstrates the existence of a totally disabling respiratory impairment. 30 U.S.C. § 921(c).

**1518**

is totally disabling. As ABC points out, Congress heard evidence that disability was not clearly related to simple pneumoconiosis. *See, e.g.,* S.Rep. No. 209, 95th Cong., 1st Sess. 17 (1977), Hearings on S. 3183, *supra,* at 682.

On the other hand, Congress heard strong evidence that the incidence of pneumoconiosis increases with duration of mine employment. *See, e.g.,* H.R.Rep. No. 151, 95th Cong., 1st Sess. 5 (1977), U.S.Code Cong. & Admin.News 1978, p. 237; S.Rep. No. 209, 95th Cong., 1st Sess. 17 (1977); S.Rep. No. 1254, 94th Cong., 2d Sess. 7–8 (1976); Hearings on S. 3183, *supra,* at 6. *Accord Turner Elkhorn,* 428 U.S. at 29, 96 S.Ct. at 2899. As to the viability of x-rays, Congress heard evidence that a positive x-ray finding by a qualified reader indicates the presence of pneumoconiosis. S.Rep. No. 209, 95th Cong., 1st Sess. 10 (1977); Hearings on S. 3183, *supra,* at 681 (chest x-ray's value is in helping to determine the coal mine dust burden of the lungs, and to provide one of the essential ingredients for the diagnosis of pneumoconiosis). Several doctors who testified that the x-ray should not be used exclusively to determine the presence of disability were concerned about the risk that a miner who is totally disabled may have a *negative* chest x-ray. Hearings on S. 2675 and S. 2289, *supra,* at 42, Hearings on H.R. 18, H.R. 42, H.R. 43, and H.R. 5702, *supra,* at 101. Furthermore, Congress heard testimony that respiratory impairments due to coal mine employment are difficult to diagnose. H.R.Rep. No. 151, 95th Cong., 1st Sess. 6 (1977); S.Rep. No. 1254, 94th Cong.2d Sess. 7 (1976). Although the x-ray results may be imperfect, Congress heard testimony that the x-ray is the most important single factor in the diagnosis of pneumoconiosis. H.R.Rep. No. 151, 95th Cong., 1st Sess. 7 (1977); 117 Cong.Rec. 40429 (November 10, 1972) (statement of Rep. Perkins); Hearings on S. 3183, *supra,* at 681–82.

Having been told that a positive x-ray combined with so many years of employment indicate simple pneumoconiosis, Congress then heard evidence that pneumoconiosis, in either its simple or its complicated

form, may be totally disabling. H.R.Rep. No. 151, 95th Cong., 1st Sess. 3 (1977); 117 Cong.Rec. 40429 (November 10, 1971) (statement of Rep. Perkins).

Thus, Congress was not acting in a "purely arbitrary" manner when it concluded that there was some rational connection between ten years of coal mining and x-ray evidence of pneumoconiosis and total disability due to pneumoconiosis arising out of coal mine employment. Furthermore, Congress provided that the presumption of disability is rebuttable. The employer remains free to defeat the miner's claim by showing that the miner is not totally disabled or that his disability was not caused by pneumoconiosis. *See* 20 C.F.R. § 727.-203(b). Therefore, we hold that the presumption set out in section 727.203(a)(1) is constitutional.

The judgment is AFFIRMED.