**HOME HEALTH SERVICES OF THE U. S., INC., etc., Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of the Department of Health and Human Services, Defendant-Appellee.**

No. 81–5431.

United States Court of Appeals, Eleventh Circuit.

Aug. 16, 1982.

Rehearing Denied Oct. 25, 1982.

**354**

Donna D. Fraiche, Danielle M. Lombardo, New Orleans, La., for plaintiff-appellant.

Henry R. Goldberg, Dept. of H.H.S., Baltimore, Md., Lloyd G. Bates, Jr., Asst. U.S. Atty., Miami, Fla., Joel Lerner, Atty., Dept. of Health & Human Ser., Atlanta, Ga., for defendant-appellee.

Before TUTTLE, RONEY and CLARK, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal involves a claim for compensation under the Health Insurance for the Aged Act, commonly known as the Medicare Act, 42 U.S.C. §§ 1395 *et seq.* (1976 and Supp. *IV*). The plaintiff-appellant, Home Health Services of the United States, Inc., sought judicial review in the district court of an administrative decision entered by the Provider Reimbursement Review Board denying a portion of the claimed compensation. The district court entered an order granting summary judgment in favor of the government. On appeal, we affirm for the reasons which follow.

The Medicare Act created a federally funded "hospital insurance" program which allows beneficiaries of the Act to receive services rendered by "providers," [1] including home health agencies, for a nominal fee. The beneficiaries are required to pay only an annual deductible charge and a coinsurance amount. 42 U.S.C. § 1395e(a) and (b). The government normally pays the "reasonable costs" of the covered services directly to the providers rather than the beneficiaries. Under this reimbursement

---

1. Providers of services are defined in the Act to include hospitals, skilled nursing facilities, comprehensive outpatient rehabilitation facilities, and home health agencies. 42 U.S.C. § 1395x(u). A provider becomes a participant in the Medicare program by filing an agreement with the Secretary of Health and Human Services. 42 U.S.C. § 1395cc.

plan, the provider receives interim payments on a monthly basis. Adjustments for underpayments or overpayments are made by either the Secretary of Health and Human Services or a fiscal intermediary after the close of the provider's fiscal year. 42 U.S.C. §§ 1395g and 1395x(v)(1)(A)(ii); 42 C.F.R. § 405.402(b)(1), (2) and § 405.454. This final determination of the reimbursable cost is based upon a cost report which the provider is required to file. 42 C.F.R. § 405.406(b). After analyzing the cost report and undertaking an audit if necessary, the fiscal intermediary furnishes the provider with a written notice of program reimbursement. 42 C.F.R. § 405.1803. If dissatisfied with the intermediary's determination, the provider may, where the amount in controversy is $10,000 or more, request a hearing before the Provider Reimbursement Review Board (Board).[2] 42 U.S.C. § 1395 oo.

The determination of the amount of "reimbursable costs" is guided by the provision of the Medicare Act which states that the amount paid to providers shall be the lesser of the "reasonable costs" of the services covered by the Act or the customary charges for such services. 42 U.S.C. § 1395f(b). The Act defines "reasonable cost" as the "cost actually incurred, exclud-

ing therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services … 42 U.S.C. § 1395x(v)(1)(A). This statutory section authorizes the Secretary to establish the methods to be used and the items to be included in determining the reasonable costs for the different types of providers.[3] *Id.* Pursuant to this authorization, the Secretary has promulgated various regulations. 42 C.F.R. §§ 405.401–405.488. These regulations provide for the reimbursement of all necessary and proper costs, including administrative costs, related to the rendering of services covered by the Act. These regulations further recognize that:

The costs of providers' services vary from one provider to another and the variations generally reflect differences in scope of services and intensity of care. The provision in [the Medicare Act] for payment of reasonable cost of services is intended to meet the actual costs, however widely they may vary from one institution to another. This is subject to a limitation where a particular institution's costs are found to be substantially out of line with other institutions in the same area which are similar in size, scope of services, utilization and other relevant factors.

---

2. The Board is composed of five persons knowledgeable in the field of cost reimbursement, including two provider of services representatives. 42 U.S.C. § 1395oo(h).

3. This statutory scheme places broad discretion in the Secretary to develop methods for determining reasonable costs:

Such regulations may provide for determination of the costs of services on a per diem, per unit, per capita, or other basis, may provide for using different methods in different circumstances, may provide for the use of estimates of costs of particular items or services, may provide for the establishment of limits on the direct or indirect overall incurred costs or incurred costs of specific items or services or groups of items or services to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services to individuals covered by the insurance program established under this subchapter, and may provide for the use of charges or a percentage of charges where this method reasonably reflects the costs. Such regulations

shall (i) take into account both direct and indirect costs of providers of services (excluding therefrom any such costs, including standby costs, which are determined in accordance with regulations to be unnecessary in the efficient delivery of services covered by the insurance programs established under this subchapter in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by this subchapter will not be borne by individuals not so covered, and the costs with respect to individuals not so covered, will not be borne by such insurance programs, and (ii) provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive.

42 U.S.C. § 1395x(v)(1)(A).

42 C.F.R. § 405.451(c)(2). In addition, the Secretary has promulgated the Health Insurance Manual 15, Provider Reimbursement Manual (HIM–15, PRM) which contains guidelines for determining reasonable costs. The guidelines set forth further criteria for determining when actual costs are "reasonable."

> Implicit in the intention that actual costs be paid to the extent they are reasonable, is the expectation that the provider seeks to minimize its costs and that its actual costs do not exceed what a prudent and cost-conscious buyer pays for a given item or services (see § 2103). If costs are determined to exceed the level that such buyers incur, in the absence of clear evidence that the higher costs were unavoidable, the excess costs are not reimbursable under the program.

HIM–15, PRM § 2102. These guidelines specifically address reasonable compensation to employees. The guidelines instruct fiscal intermediaries to conduct surveys and further designate various factors which should be considered in establishing ranges of compensation for comparable institutions within geographic areas. *See* HIM–15, PRM §§ 904, 905.

In the instant case, Home Health Services of the United States, Inc., the provider, filed a cost report for a nine month period ending on September 30, 1975. The provider claimed Medicare reimbursement for compensation of its Administrator, Donald Kroner, in the amount of $33,666 (an annualized figure of approximately $45,000). This claim was broken down as $25,060 for salary, $7,715 for pension (representing 25% of salary) and $841 as insurance. The fiscal intermediary, Blue Cross of Florida, conducted an audit and determined that the total reimbursement cost for this item should be limited to $18,198. Dissatisfied with the intermediary's adjustment of its claim, the provider requested and obtained a hearing before the Board on March 28, 1978. In a decision rendered on July 25, 1978, the Board upheld the intermediary's adjustment, finding that the amount of compensation claimed was unreasonable. On September 7, 1978, the Health Care Financing Administration declined to review the Board's decision, which decision thus constituted final agency action. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 4051.-875. The provider then sought judicial review of the Board's decision pursuant to 5 U.S.C. § 706 and 42 U.S.C. § 1395oo(f)(1). Finding that the Board's decision was supported by substantial evidence in the record, the district court granted summary judgment in favor of the government.

On appeal, the provider asserts that the decisions of the Board and the district court are erroneous. The thrust of the provider's argument is that the Board improperly relied on an invalid survey in determining that the amount of compensation claimed was unreasonable. Moreover, the provider asserts that since other surveys demonstrate that its costs were not "substantially out of line" with costs incurred by comparable institutions, the Board's decision in this case is not supported by substantial evidence.

 The scope of review of agency actions is limited to a determination of whether the Board's findings are arbitrary, capricious, an abuse of discretion, not in accordance with the law or unsupported by substantial evidence in the record as a whole. 5 U.S.C. § 706(2)(A), (E); 42 U.S.C. § 1395 oo(f)(1); *see, e.g., Missouri-Kansas-Texas R.R. Co. v. United States,* 632 F.2d 392 (5th Cir. 1980), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3004, 69 L.Ed.2d 388 (1981); *School Board of Broward County v. Department of Health, Education and Welfare,* 525 F.2d 900 (5th Cir. 1976). In the context of judicial review of agency actions, substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See, e.g., Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *School Board of Broward County v. Department of Health, Education and Welfare, supra.* Under this narrow standard of review, a court lacks the power to substitute its judgment for that of the administrative agency. If the agency's findings are supported by sub-

stantial evidence and are not arbitrary or capricious, the reviewing court cannot reverse the findings of the agency on the basis that it would have decided the case differently. *See, e.g., NLRB v. Nevada Consolidated Copper Corp.*, 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305 (1942); *Harvey v. Nunlist*, 499 F.2d 335 (5th Cir. 1974).

In evaluating the reasonable costs for compensation of administrators, the Board focuses on both objective and subjective factors. *See, e.g., Unicare v. Califano*, CCH Med. & Med. Guide ¶ 28,862 (D.D.C.1978); *Fox Valley Home Health Services, Inc. v. Blue Cross Association*, CCH Med. & Med. Guide ¶ 30,447 (PRRB dec., Jan. 4, 1980). The objective factors relied on by the PRR in the instant case included a variety of surveys. The provider argues that these surveys were invalid and thus the Board's decision is not supported by substantial evidence. Although the record in this case is somewhat unclear, it appears that the Board reviewed at least four separate surveys in arriving at its decision. Two of these surveys have been subjected to a great deal of criticism. In *Hopewell Nursing Home, Inc. v. Califano*, CCH Med. & Med. Guide ¶ 28,718 (D.C.S.C.1977), the court enjoined the application of the salary ranges of nonowner administrators contained in a regional skilled nursing facility survey to the plaintiffs, a class of owner administrators of skilled nursing facilities. In addition the Board has indicated that a regional survey of administrators in home

health agencies (The BIHRO-Atlanta survey) is equally unreliable. *See, e.g., Home Health Care of Mississippi, Inc. v. Blue Cross Association*, CCH Med. & Med. Guide ¶ 29,214 (PRRB dec., June 16, 1978). Indeed, the BIHRO survey, an unofficial survey, has been rejected by Atlanta Regional Medicare Director, who noted in a letter dated September 7, 1979 that there is an absence of reliable regional salary guidelines for home health agencies. In the instant case, the Board clearly recognized that these guidelines could not be rigidly applied [4] by stating:

> While much has been said about the unfairness and deficiencies of the BIHRO guidelines and surveys, they do represent an indication of reasonableness.

The Board further noted that while none of the other surveys available to it were entirely satisfactory, it had sufficient information to enable it to form a judgment concerning the reasonableness of the compensation in this case. The third survey relied upon by the court has not been specifically rejected by the Board.[5] This survey evaluated the 1975 salaries of 51 home health agencies, including 45 certified agencies, within the state of Florida. According to this survey the mean salary for home health agency administrators in 1975 was $21,500. Thus, while the reliability of some of these surveys is questionable, the Board appeared to review all available [6] surveys as indications of reasonableness.

4. To the extent that the Board relied upon the BIHRO survey, it appears that it compensated for the unreliability factor by allowing Kroner maximum salary for that size agency, despite the Board's conclusion that Kroner lacked experience and was engaged in self-dealing.

5. Indeed, the provider relies to some extent on this survey in arguing that the Board should have used the $35,000 *projected* salary rather than the actual salary contained in the survey.

6. The provider argues that the Board should look to surveys in other regions where no adequate survey for the region in question exists. Thus, the provider argues that the Board should have evaluated the Denver regional survey, which has been approved by the Medicare Bureau. However, section 905.2 merely states:

> Surveys shall include all proprietary institutions and a sufficient number of comparable nonproprietary institutions in the same geographical area so that an adequate comparison can be made. The comparison should take into consideration the services and compensation of nonowner administrators of proprietary and nonproprietary facilities.

While it may have been helpful for the Board to compare the Denver survey, we find nothing in this section of the guidelines which suggests that the Board should do so. In the absence of such language, this Court has no basis for requiring the Board to undertake a review of other regional surveys.

The provider also relies on the Dunham survey. This survey was however not available at the time of the decision in this case.

A similar analysis applies to the Board's reliance on a fourth survey, the Tampa-St. Petersburg survey, as a basis for reducing Kroner's pension from 25% to 8% of his salary. Support for this reduction can be found not only in this survey but also by reviewing Senate Subcommittee reports regarding unreasonable pension plans, the national industry contribution limits and the health care industry average pension contribution.

The Board's decision in this case was substantially guided by its review of the subjective factors involved:

> [T]he owner/administrator set his own rates of compensation, based upon his own valuation of his expertise, background and services rendered. This form of self-dealing showed little regard for the Part A trust fund responsible for reimbursement.

There is ample evidence in the record to support the Board's determination that Kroner was engaged in self-dealing. Both Kroner and his wife were officers and members of the provider's board of directors. Kroner had the ability to set both his own salary and pension. Kroner engaged his own wholly-owned firm, Capital Home Health Services, Inc., to provide management and consultant services to the provider. The record further indicates that many of the duties and responsibilities purportedly undertaken by Kroner were duplicated by the provider's accounting firm. Finally, the record contains evidence indicating that Kroner lacked experience in the field of health care.

Based on the above analysis, we find no basis for concluding that the Board's decision is either arbitrary or capricious. Moreover, when viewed as a whole, the record in this case contains substantial evidence to support the Board's decision.

Accordingly, the decision of the district court is AFFIRMED.