**GRAHAM HOSPITAL ASSOCIATION,**
**Plaintiff-Appellee,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Carolyn K. Davis, Administrator, Health Care Financing Administration, Department of Health and Human Services, Daniel Bourque, Deputy Administrator, Health Care Financing Administration, Department of Health and Human Services, Defendants-Appellants.**

**No. 83–1862.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 15, 1984.

Decided July 19, 1984.

Jaclyn C. Taner, Dept. of Health & Human Services, Washington, D.C., for defendants-appellants.

James M. Gaynor, Jr., McDermott, Will & Emery, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, FLAUM, Circuit Judge, and PARSONS, Senior District Judge.[*]

FLAUM, Circuit Judge.

This is an appeal from a district court decision that Graham Hospital Association is entitled to an exemption from the Medicare cost limits that are prescribed by federal statute. For the reasons set forth below, we affirm.

Under the Medicare statute, payment by the federal government for medical services furnished to an individual beneficiary may be made only to the provider of the services. 42 U.S.C. § 1395f(a) (1982). This reimbursement to the provider is limited,

_____

[*] The Honorable James B. Parsons, Senior District Judge for the Northern District of Illinois, Eastern Division, is sitting by designation.

however, to the reasonable cost of the medical services, *id.* at § 1395f(b)(1), which is defined as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." *Id.* at § 1395x(v)(1)(A). In implementing this statutory provision, the Secretary of Health and Human Services ("Secretary") has set forth regulations that establish the method to be used to determine reasonable cost limitations. *See* 42 C.F.R. § 405.460 (1983). If a health care provider furnishes services that exceed these cost limitations, the provider may charge the additional cost to the individual Medicare beneficiaries. *Id* at § 405.461. Only a few types of health care providers are exempt from the reasonable cost limitations and may be reimbursed by the government for the full costs of their services. *See id.* at §405.460(e). One such exempt provider is the sole community hospital ("SCH"), defined as "a hospital which, by reason of factors such as isolated location or absence of other hospitals, is the sole source of such care reasonably available to beneficiaries." *Id.* at § 405.460(e)(1).

Graham Hospital is a community hospital located in Canton, Illinois. During the fiscal year ending June 30, 1980, the costs that Graham incurred in treating Medicare beneficiaries exceeded the reasonable cost limitations that had been set by the Health Care Financing Administration ("HCFA"), which acts on behalf of the Secretary in supervising payments under the Medicare program. Seeking an exemption from the limitations, Graham submitted a request to its fiscal intermediary [1] for designation as an SCH. On October 29, 1980, the intermediary recommended to the Chicago regional office of the HCFA that Graham be granted an SCH exemption. The HCFA disa-

greed, however, and it indicated to the intermediary on December 1, 1980, that Graham should not be designated as an SCH and therefore could be reimbursed only to the extent of the reasonable cost limitations. Pursuant to 42 U.S.C. § 1395oo (a)(1), Graham appealed to the Provider Reimbursement Review Board ("PRRB") for a hearing on the issue, and a full hearing took place on November 30, 1981.

The PRRB ruled, on March 9, 1982, that Graham was entitled to designation as an SCH. In reaching this conclusion, the PRRB relied on six factual findings. First, Graham is not located within a standard metropolitan service area ("SMSA"), and it is the only short-term, acute-care hospital within its service area, which consists of eighteen townships in Fulton County. Second, the use of Graham by service area patients was approximately seventy-seven percent.[2] Third, fifteen percent of service area patients used two hospitals located in Peoria, which is about thirty-five miles from Graham, for specialty treatment that Graham does not furnish. Fourth, approximately one percent of the service area patients used two hospitals that are located within twenty-six miles of Graham.[3] Fifth, all of the physicians practicing in Graham's service area admitted patients only to Graham. Sixth, public transportation is very limited, and only two-lane highways are available for vehicular transportation.

On May 5, 1982, the Deputy Administrator of the HCFA, acting on behalf of the Secretary and pursuant to 42 U.S.C. § 1395 oo (f)(1), reversed the PRRB's decision. Although the Deputy Administrator did not disturb the PRRB's factual findings, he discussed several additional considerations. Referring to the six hospitals nearest to Graham, the Deputy Administrator stated

---

**1.** As explained in the appellants' brief, "[a] fiscal intermediary is a private organization under contract with the Department of Health and Human Services to review claims and administer payments under the Medicare Statute." Appellants' Brief at 2.

**2.** Findings with regard to the proportionate use of hospitals in the Canton area are based upon

the August-September 1978 data from the Illinois Hospital Association Patient Origin Study. *See* Stipulation of Facts at 2.

**3.** Pekin Memorial Hospital is approximately 26 miles from Graham, and Mason District Hospital is approximately 23 miles from Graham. Stipulation of Facts at 4.

that "it appears that no Medicare beneficiary in [Graham's] service area was further than 21 miles from a like facility." Deputy Administrator's Decision dated May 5, 1982, at 5. Also, the Deputy Administrator noted that although travel to hospitals in Graham's service area was almost exclusively by private motor vehicle, "[t]he evidence indicated that workers at a nearby plant who lived in Canton commuted approximately 20 miles to work each day." *Id.* Furthermore, since nearly twenty-five percent of the service area patients used hospitals other than Graham, the Deputy Administrator observed that "it would appear that those patients have found a satisfactory alternative for hospital care." *Id.* at 6. Based on these considerations, the Deputy Administrator concluded that the residents of Graham's service area "had ample alternative sources of hospital care reasonably available to them." *Id.*

Graham obtained judicial review under 42 U.S.C. § 1395*oo* (f)(1). On March 9, 1983, the district court ruled that the Deputy Administrator's decision ignored the realities of the admitting practices of physicians in the Canton area. The court reversed the decision, finding it unsupported by substantial evidence.

In appealing the district court's ruling, the appellants discuss a number of the facts considered by the Deputy Administrator, and they argue that the rational connection between these facts and the Deputy Administrator's decision mandates affirmance of the decision. Graham Hospital, on the other hand, contends that the district court was correct in reversing the Deputy Administrator's decision because it conflicts with a number of the agency's prior decisions.

The scope of judicial review of a decision by the Deputy Administrator is limited by the Administrative Procedure Act. *See* 42 U.S.C. § 1395*oo* (f)(1). *See also Home Health Services of the United States v. Schweiker,* 683 F.2d 353, 356 (11th Cir. 1982); *Catholic Medical Center v. NH–VT*

*Hospitalization,* 546 F.Supp. 297, 298 (D.N.H.1982), *aff'd,* 707 F.2d 7 (1st Cir. 1983). Under the Administrative Procedure Act, a reviewing court may set aside only those agency actions, findings, and conclusions that are found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A), (E) (1982). An administrative decision is supported by substantial evidence if there exists "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. Labor Board,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). *See also Home Health Services of the United States v. Schweiker,* 683 F.2d at 356. As this circuit recently has explained, "[s]ubstantial evidence is that grade of evidence which will reasonably support a conclusion reached by the [agency], not a preponderant weight of the evidence.... An [agency] decision may not be reversed on review if there is a rational connection between the facts found and the choice made." *Bloomer Shippers Ass'n v. ICC,* 679 F.2d 668, 672 (7th Cir.1982).

The type of evidence that is relevant to a determination of SCH status is discussed in two Intermediary Letters ("I.L.") that the Secretary issued through the HCFA.[4] The first letter, I.L. 74–22, was issued in July 1974 and states in pertinent part:

> The determination that a hospital is the sole source of hospital services reasonably available to beneficiaries is based on such factors as (1) the normal commuting distance to work for residents of the locality served by the hospital, (2) travel time and availability of public transportation to the nearest like facility, and (3) the extent to which persons travel to other localities for hospital care. Generally, neither a hospital located within a 25 mile radius of a like facility (acute, long term), nor a hospital within an SMSA can be found to qualify for a sole community hospital exemption.

---

**4.** The appellants explain in their brief that Intermediary Letters are interpretive instructions that the Secretary issues through the HCFA to the fiscal intermediaries. Appellants' Brief at 8.

In April 1978, the HCFA issued I.L. 78–17, which summarizes the factors listed in I.L. 74–22 as "(1) the extent to which and reasons why residents of the hospital's service area obtain, from the nearest like facilities, the type of hospital services available to them from the requesting hospital, and (2) the ease and manner, as judged by local standards, with which these residents use these like facilities." Furthermore, I.L. 78–17 explains:

> [P]hysical isolation of the hospital and its service area, as demonstrated by the absence of reasonably accessible like facilities, or isolation of the hospital and its service area due to unusual local circumstances which results in general nonuse of the otherwise closest like facilities by residents in the hospital's service area is the key factor to a determination that a hospital is an SCH within the meaning of regulations section 405.460(f)(4). Examples of unusual local circumstances include, but are not limited to, adverse topographical conditions, extended periods of adverse weather conditions, and hospital admitting patterns of physicians in practice in the hospital's service area.

In the present case, the Deputy Administrator relied upon I.L. 74–22 and I.L. 78–17 as "governing criteria." Nonetheless, the Deputy Administrator's decision did not address the well-supported fact, relevant under I.L. 78–17, that none of the physicians in Graham's service area admitted patients to any hospital other than Graham.[5] According to I.L. 78–17, the admitting practices of area physicians may cause isolation of a hospital, which is the "key factor" in determining whether a hospital is an SCH. It was thus critical that this factor be considered. *See Hamilton Memorial Hospital v. Schweiker,* No. C79–166R, unpub-

lished op. at 7 (N.D. Ga. June 1, 1982). Moreover, in view of the admitting practices of physicians in Graham's service area, the Deputy Administrator's observations that each Medicare beneficiary is located at least twenty-one miles from a like facility and that some Canton residents commute about twenty miles to work are significant only if it is reasonable to require Medicare patients to turn to physicians outside their service area in order to be admitted to other, less expensive facilities. We find nothing in the legislative history of the Medicare statute, in the current regulations, or in the I.L.'s to suggest that either Congress or the Secretary intended to impose such a requirement. Indeed, in both I.L. 74–22 and I.L. 78–17, the factors for determining SCH status emphasize consideration of the patterns of actual hospital use by local patients and physicians.[6]

The Deputy Administrator's decision also discusses the somewhat uncertain assertion that "it would appear that one-fourth of the patients in the service area have found a satisfactory alternative for hospital care" because they used other hospitals. However, the PRRB found, and the Deputy Administrator did not dispute, that the majority of these patients—fifteen percent of the total number of patients in Graham's service area—used the Peoria hospitals only to obtain specialty treatment that is not available at Graham. The fact that these patients went to Peoria out of necessity does not indicate that the Peoria hospitals are a satisfactory alternative to Graham for purposes of the SCH exemption. *See Tillamook County General Hospital,* Decision of Deputy Administrator, August 22, 1980 (CCH Medicaid and Medicare Guide ¶ 30, 782) at 9387 ("[a]s a general

---

**5.** In their stipulations of fact, the parties identified 26 physicians practicing in Graham's service area, all of whom had admitting privileges at Graham. Although three of these physicians were courtesy staff members of other hospitals, none of the three admitted patients to any facility other than Graham during the fiscal year ending June 30, 1980. Stipulation of Facts at 5.

**6.** We note that the distance between local Medicare beneficiaries and other hospitals, though not specifically listed in the I.L.'s as a factor in determining SCH status, can be relevant and may be considered by the Deputy Administrator, who operates at the direction of the Secretary. However, by recognizing I.L. 74–22 and I.L. 78–17 as governing criteria, the Deputy Administrator is required to consider as well the relevant factors articulated therein.

rule, approximately 20% of the residents of an area will go to a different facility because the capabilities of a local provider will not satisfy their needs"). Thus, only eight percent of the total number of patients in Graham's service area actually used hospitals other than Graham for services available at Graham.

Looking at the evidence as a whole, we find that although there is some indication that beneficiaries in Graham's service area are twenty-one miles away from other hospitals and that this is not an unusual distance to commute, we are faced with the key undisputed fact that physicians in the service area admitted patients only to Graham and also with the fact that only eight percent of the local patients used other hospitals to receive services that were available at Graham. These patterns of actual hospital use, which are relevant considerations under the governing criteria of I.L. 74–22 and I.L. 78–17, compel us to hold that there is insufficient evidence to reasonably support the Deputy Administrator's conclusion that Graham is not an SCH.[7]

Accordingly, we affirm the district court's decision that Graham is entitled to an SCH exemption from the Medicare cost limits.

---

**7.** The fact that Mason District Hospital is located 23 miles from Graham, *see supra* note 3, does not change our result. Although I.L. 74–22 states that a hospital located within a 25-mile radius of a like facility generally cannot be found to qualify for an SCH exemption, this guideline is not conclusive. "Indeed, the fact that a review procedure exists for appealing a provider's classification suggests that the classification should be based on all the relevant factors rather than application of a clearly arbitrary mileage standard." *Santa Yuez Valley Hospital, Inc.,* Decision of the PRRB, July 25, 1978 (CCH Medicaid and Medicare Guide, ¶ 29,221) at 10,412.