**MORTON PLANT HOSPITAL, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 88–534–CIV–T–17(B).**

United States District Court, M.D. Florida, Tampa Division.

Aug. 7, 1991.

to defendant's "supplemental brief ... in support of its motion for summary judgment."

Emil C. Marquardt, Jr., McMullen, Everett, Logan, Marquardt & Cline, P.A., Clearwater, Fla., and Robert E. Mazer, Ober, Kaler, Grimes & Shriver, Baltimore, Md., for plaintiff.

Peter B. Loewenberg, Asst. U.S. Atty., Tampa, Fla., for defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on both parties' motions for summary judgment in an appeal from an administrative decision rendered by the Health Care Financing Administration (HCFA).

## I. BACKGROUND

Plaintiff, Morton Plant Hospital, is a 745–bed acute care, non-profit hospital. Plaintiff, a participant in the Medicare program administered by Defendant, claims that it has been insufficiently compensated under the program for services rendered to program beneficiaries. Specifically, Plaintiff disputes Defendant's refusal to fully reimburse its contributions to its pension plan made in the 1982 and 1983 fiscal years.

On January 1, 1967, Plaintiff established a noncontributory, defined benefit plan covering substantially all of its employees. Since that time, Plaintiff has retained the Wyatt Company, an employee benefits and actuarial consulting firm, to assist the implementation of the plan. Pursuant to its duties, Wyatt prepares annual actuarial valuation reports analyzing the plan's liabilities. These reports generally specified a minimum and a maximum contribution for Plaintiff to make to its pension plan. From 1967 to 1975, the minimum figure represented the minimum contribution necessary to keep the plan on a currently funded basis. After 1975, the minimum figure was based on statutory requirements under ERISA. Through the entire period, the maximum figure equalled the maximum contribution deductible by a taxable entity.

Wyatt arrived at these minimum and maximum figures by manipulating the amortization rate of the plan's past service costs.[1] Plaintiff's annual contribution to the plan must meet the plan's current service costs plus a share of the plan's past service costs. The size of that share can vary substantially based on amortization schedule employed. Wyatt calculated the minimum contribution to the plan by paying past service costs on the longest acceptable amortization schedule based on plan documents and legal requirements. For its minimum contribution figures, Wyatt used varying amortization periods, ranging from fifteen to forty years. In contrast, Wyatt employed a standard ten year amortization of past service costs for its maximum contribution, the shortest period allowed under Medicare regulations. § 2142.5, Provider Reimbursement Manual (HIM–15).

From the beginning of the plan until 1977, Plaintiff made annual contributions greater than the minimum recommended by Wyatt but less than the maximum. Each year, Medicare reimbursed Plaintiff for its contributions above the minimum. In 1978, Plaintiff hired a new accountant who, unaware of the Hospital's prior practice, funded the plan at the minimum amount from 1978 through 1981. In 1982, Hospital administrators, discovering the minimum contributions of the past four years, ordered maximum contributions to

---

1. Past service costs represent retroactive funding of accumulated obligations for the years prior to the implementation of the plan. These costs are distinct from current service costs which represent pension liabilities attributable to the current year.

be made in 1982 and 1983. However, Blue Cross and Blue Shield of Florida, Inc., Plaintiff's Medicare intermediary,[2] refused to reimburse Plaintiff's 1982 and 1983 contributions in excess of the minimum figure specified by Wyatt.

## II. THE ADMINISTRATIVE RECORD

For the cost years at issue, Medicare reimbursed hospitals for either their normal charges to the public or their reasonable costs of providing services, whichever was less. 42 U.S.C. § 1395f(b). 42 U.S.C. § 1395x(v)(1)(A) defines "reasonable cost" as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services...." Under this statute, Defendant is empowered to develop appropriate rules and standards for its enforcement. *Id.*

Pursuant to 42 U.S.C. § 1395oo, Plaintiff appealed its intermediary's decision to the Provider Reimbursement Review Board (PRRB), a five member panel designed to resolve funding disputes arising between care providers and intermediaries. On December 16, 1987, the PRRB affirmed the intermediary's decision by a vote of four to one. The majority opinion found Plaintiff's contributions to its pension plan to be excessive under § 2142.6C of the Provider Reimbursement Manual (HIM–15) regulating reimbursements under Medicare for pension plans.

After this defeat, Plaintiff appealed the PRRB decision to the HFCA. Although HFCA affirmed the prior decision, it rejected the original PRRB logic, replacing it with an analysis based on 42 C.F.R. § 405.-451.[3] This regulation contains a definition of reasonable costs, finding them to be limited to those costs which are necessary to provide services to program benefi-

ciaries. The HFCA reasoned that Plaintiff could have provided identical services without the extra contribution to its pension plan. Accordingly, it found payments above the minimum contribution to be unnecessary and, therefore, unreasonable.

Having exhausted its administrative remedies, Plaintiff filed this complaint on April 15, 1988 seeking judicial review pursuant to 42 U.S.C. § 1395oo(f)(1).

## III. DISCUSSION

■ The authority of the Court to review administrative decisions is limited. Under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the HFCA decision must be affirmed unless it was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), or "unsupported by substantial evidence," 5 U.S.C. § 706(2)(E). This deferential standard of review reflects the special expertise and experience of the PRRB and the HFCA in the health care field. *Alacare Home Health Servs., Inc. v. Sullivan,* 891 F.2d 850, 854 (11th Cir.1990); *Lloyd Noland Hosp. & Clinic v. Heckler,* 762 F.2d 1561, 1565 (11th Cir.1985). Accordingly, if an administrative decision is supported by substantial evidence and is not arbitrary or capricious, it cannot be reversed on the basis that the reviewing court would have decided the case differently. *Home Health Servs. of the U.S., Inc. v. Schweiker,* 683 F.2d 353, 356–357 (11th Cir.1982).

■ Plaintiff contends that the partial disallowance of its pension costs cannot be supported under Medicare regulations requiring reimbursement of necessary costs. It notes that payments to its pension plan in excess of the minimum contribution are

---

**2.** Payments to hospitals under Medicare are typically carried out through fiscal intermediaries: private organizations acting under contracts with the government to administer the Medicare program. 42 U.S.C. § 1395h. These intermediaries determine the reasonable cost of services to Medicare patients under the controlling regulations and render appropriate payment.

**3.** This regulation was recodified in 1986 as 42 C.F.R. § 413.9(c)(3). It states:
    The determination of reasonable cost of services must be based on cost related to the care

of Medicare beneficiaries. Reasonable cost includes all necessary and proper expense incurred in furnishing services, such as ... payments for ... pension plans.... However, if the provider's operation costs include amounts not related to patient care, specifically not reimbursable under the program, or flowing from the provision of luxury items or services (that is, those items or services substantially in excess of or more expensive than those generally considered necessary for the provision of needed health services), such amounts will not be allowable.

not wasted. These additional payments retire some of the past service costs of the pension plan reducing the plan's total liability. In turn, this reduction of liability will inevitably lead to savings in future years which may be reflected in smaller pension plan charges to Medicare in future years. In essence, Plaintiff argues that Medicare will have to reimburse its full pension costs either sooner or later and, therefore, there is ultimately no difference between payment on a normal schedule and payment on an accelerated schedule. Plaintiff further reasons that because the minimum payment was reimbursable, additional payments within legal limits should also be reimbursable.

Moreover, Plaintiff claims that there are important business advantages accruing to the payment of pension liability on an expedited basis. For example, a pension plan which contains a surplus may allow an employer to avoid a penalty if at some time in the future the employer is unable to make prompt payment. Thus, Plaintiff argues that there are good reasons to prefer accelerated payment of pension liabilities.

This position, however, is unconvincing. First of all, as pointed out in the HFCA opinion, Plaintiff's disallowed pension expenses will eventually be reimbursed, just not in the current year:

> [It] is not to say that such excess contributions to the plan should be disallowed altogether. To the extent the Provider has future pension funding obligations, any current excess contributions may be applied and reimbursed at that time. This interpretation is consistent with the program instructions in Sections 2142.6C and 2142.5 of the [Provider Reimbursement] Manual. Both of these sections recognize the requirement that past service costs be amortized and that there can be excessive payments to the fund. Section 2142.6C specifically calls for the application of excessive payments against future obligations.

HFCA opinion, p. 2. Thus, if, over time, Plaintiff retired its pension obligations early through extra payments, it would continue to receive reimbursements from Medicare based on the minimum payment schedule even though Plaintiff makes no more yearly payments to its plan.

This situation may be analogized to a purchase of supplies, e.g. if a hospital bought a large supply of drugs lasting several years, it would not be compensated for all the drugs in the first year. Instead, Medicare would reimburse the cost of the drugs as they were used. Similarly, Plaintiff can be said to have made pension payments in advance which will not be reimbursable until they are "used," i.e. come due based on the original schedule for the pension plan. Further support for such a position comes from the testimony of Plaintiff's accountant stating that the extra payments to the pension plan were carried on Plaintiff's books as "prepaid expenses." Thus, it is difficult to see how these additional expenses can be considered "necessary" under Medicare regulations until they must be paid.

Second, those advantages cited by Plaintiff in favor of accelerated payment do not accrue to the Medicare program. Any penalties accessed for late payment would be paid by Plaintiff without reimbursement. Indeed, Plaintiff cannot expect the government to pay for a "cushion" to protect it from obligations it entered into voluntarily. On this logic, Plaintiff might want Medicare to prepay its accounts for its other obligations as well. If Plaintiff wants to protect itself from a potential default, it will have to bear the costs of that protection itself.

In fact, there are a number of reasons why the government might prefer a longer, unvarying amortization of past service costs. Regular, relatively predictable payments would facilitate Medicare budgeting. Payments spread over a long period of time might serve to limit the losses to the program if a care provider goes out of business. Linking pension payments to the delivery of services may reduce labor costs per service, stretching the program's budget to the benefit of care recipients during this time of high federal deficits.

Finally, as suggested by Defendant, the government had a particularly strong inter-

est at that time in the reduction of service costs due to an imminent change in Medicare procedure. In October 1983, Medicare switched from a system of paying "reasonable costs" of provider services to paying a set amount for each procedure regardless of the cost of an individual service. The base year for the calculation of these set costs was 1982, the same year Plaintiff switched from minimum to maximum funding of its pension plan. Plaintiff had an incentive to maximize its costs in 1982 because this would result in higher set payments after the change in reimbursement procedure. Although neither Defendant nor the Court has any direct evidence that Plaintiff acted on such an intention, concern over potential abuse provides the government and its intermediaries with yet another reason to have been especially suspicious of dubious or unexpected expenses.

Thus, the Court finds that the HFCA opinion represents a reasonable and fully defensible interpretation of Medicare regulations. Accordingly, it is

ORDERED that the Final Judgment of the HFCA be affirmed; and the Clerk of the Court shall enter judgment for Defendant.

DONE and ORDERED.