629 A.2d 243

NORTHAMPTON COUNTY HOME (GRACEDALE), Petitioner,

v.

DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 13, 1993.

Decided July 16, 1993.

As Corrected Aug. 3, 1993.

Roseann B. Joseph, for petitioner.

Cynthia White Williams, Asst. Counsel, for respondent.

Before CRAIG, President Judge, SMITH, J. (P.), and KELTON, Senior Judge.

KELTON, Senior Judge.

Northampton County Home (Petitioner) petitions for review of the September 11, 1992 order of the Office of Hearings and Appeals (OHA), Department of Public Welfare (DPW), which denied Petitioner's appeal from DPW's disallowance of Petitioner's claim for Medicaid reimbursement for a portion of its pension fund contribution in fiscal years 1986, 1987, and 1989. We affirm.

The issue on appeal is whether DPW erred in determining that the portion of Petitioner's pension fund contribution, satisfied by the transfer of funds from the pension fund's excess interest account to Northampton County's (the County) annuity reserve account, is not an allowable cost for purposes of Medicaid reimbursement.

We note that our scope of review is limited to determining whether DPW committed an error of law, violated any constitutional rights, and whether its findings of fact are supported by substantial evidence. *Messiah Village v. Department of Public Welfare*, 118 Pa.Commonwealth Ct. 29, 545 A.2d 956 (1988). As a general rule, DPW's interpretation of its own regulations is controlling unless it is inconsistent with

the plain language of the regulations or the statute under which the regulations were promulgated. *The Children's Hospital of Philadelphia v. Department of Public Welfare,* 153 Pa.Commonwealth Ct. 634, 621 A.2d 1230 (1993).

The County has established a retirement fund for its employees, including the employees of Petitioner. In fiscal years 1986 through 1989, the County made its pension fund contributions through a combination of checks drawn from the County's general fund and journal entries transferring excess interest in the pension fund to the County's annuity reserve account. A proportional share of the County's pension fund contribution was made on behalf of Petitioner's employees.[1]

In an audit of Petitioner's cost reports for medical assistance, DPW allowed Petitioner Medicaid reimbursement for its proportional share of the County's pension fund contributions attributable to the payments by check drawn from the general fund. DPW disallowed reimbursement for that portion attributable to the journal entry transfer of excess interest.

Petitioner appealed the disallowances to the OHA. The OHA, adopting the recommendation of the hearing examiner, denied Petitioner's appeal. Thus, Petitioner appeals DPW's disallowance of reimbursement for that portion of Petitioner's contribution drawn from the excess interest account for the fiscal years 1986, 1987, and 1989.[2] Under the County Pension Law (the Act), the County is required to make annual contributions to the retirement fund.[3] The fund is comprised of several accounts provided by statute: the county's annuity reserve account (CARA), the members' annuity reserve account, and the retired members' annuity reserve account. Monies contributed by the County are maintained in the CARA. 16 P.S. § 11657.

1. Petitioner's share of the County's contribution was thirty-five percent in 1988.

2. Petitioner failed to petition this court to review the OHA's decision on the 1988 disallowance.

3. Section 7 of the Act, Act of August 31, 1971, P.L. 400, *as amended,* 16 P.S. § 11657.

Pursuant to Section 8 of the Act, all monies and securities in the fund are placed in the custody of the county treasurer. 16 P.S. § 11658. Under Section 4 of the Act, the county retirement board administers the fund. 16 P.S. § 11654.

Section 7(a) of the Act provides that the corpus of the fund shall include all interest earned on the monies contained in the fund. 16 P.S. § 11657(a). Regular interest earned on the monies in the fund is distributed between the CARA, the members' annuity reserve account, and the retired members' annuity reserve account in predetermined amounts. *Id.* The County places any investment earnings exceeding the amount applied to these accounts in its excess interest account.

Pursuant to Title XIX of the federal Social Security Act, 42 U.S.C. §§ 1396–1396u, federal monies are available to states for the provision of medical assistance in compliance with federal standards. Under the federal regulations, Medicare is required to pay for services provided by skilled nursing facilities on the basis of reasonable costs. 42 C.F.R. § 413.1(b). "Reasonable cost includes all necessary and proper expenses incurred in furnishing services, such as ... premium payments for employee health and pension plans." 42 C.F.R. § 413.9(c)(3).

DPW, the agency authorized to administer Pennsylvania's Medicaid program, conducts audits of nursing care facilities and on that basis, reimburses the facility for allowable costs associated with the provision of nursing care services. DPW's regulations provide that allowable cost for nursing care facilities is to be determined subject to the limitations set forth in the DPW manual for allowable cost reimbursement[4] and the Medicare Provider Reimbursement Manual (HIM–15).[5] 55 Pa.Code § 1181.1.

**4.** 55 Pa.Code §§ 1181.201–1181.274.

**5.** Health Insurance Manual–15, Sections 2140–2142.7, CCH, Medicare and Medicaid Guide, paragraphs 5998–5999f.

DPW's manual provides that the HIM–15 is to serve as a supplement to the DPW manual. 55 Pa.Code § 1181.201(b). However, federal guidelines control when a matter of reimbursement is not specifically addressed in the DPW manual. *Leader Nursing Centers, Inc. v. Depart-*

Section 2140.2 of the HIM–15 specifies that "[p]rovider contributions for the benefit of employees under a deferred compensation plan are reimbursable when and to the extent such costs are actually incurred and met by the provider." According to Section 2140.4 of the HIM–15, such costs may be found to have been "actually incurred," provided that the provider has made payment in accordance with the following:

> Payment must be made by check or other negotiable instrument, cash or legal transfer of assets such as stocks, bonds, real property, etc. Where payment is made by check or other negotiable instrument, these forms of payment must be redeemed through an actual transfer of the provider's assets within the time limits specified in Section 2305.

See also Section 2142.6(A) of the HIM–15. Also, Section 2142.6(A) requires full liquidation of the provider's liabilities within a specified time frame.

Further, Section 2142.3 of the HIM–15 provides, specifically in reference to reimbursement of pension contributions, that "[f]unds existing at the discretion of the provider are not considered valid...."

Relying on *Morton Plant Hospital v. Sullivan*, 769 F.Supp. 1213 (M.D.Fla.1991) (Retirement Board properly disallowed reimbursement of portion of pension contribution in excess of minimum required payment) and *McCarrell v. Employment Retirement Board*, 120 Pa.Commonwealth Ct. 94, 547 A.2d 1293 (1988), *petition for allowance of appeal denied*, 521 Pa. 625, 557 A.2d 727 (1989) (Retirement Board properly included excess interest in calculation of assets of fund), the OHA concluded that payment by a journal entry transferring funds from the pension fund's excess interest account to the CARA does not comply with the HIM–15 requirements for reimbursable costs. In reaching this decision, the OHA held that the journal entry did not effect an actual transfer of provider's assets because the excess interest account was not a county

*ment of Public Welfare*, 82 Pa.Commonwealth Ct. 53, 475 A.2d 859 (1984). The DPW manual does not contain specific provisions pertaining to pension costs. Therefore, we refer to the HIM–15 to determine whether Petitioner's pension contribution is an allowable cost.

asset. According to the OHA, the *fund,* which is not a provider, incurs the cost. In addition, the OHA summarily determined that payment by journal entry does not constitute actual payment.

On appeal, Petitioner argues that the journal entry is a legal transfer of assets under the HIM–15 because the County has the discretion to apply the excess interest to the County's pension fund and once having done so, the County loses control of the monies.

DPW argues that the journal entry is not an "actual transfer" of monies as required by the HIM–15 because "the stocks, bonds, and securities which comprise the excess interest are not actually transferred into the pension fund, but, on the contrary, are already in the pension fund." (Respondent's° Brief at 11). Secondly, DPW argues that the County did not effect a transfer of "provider's assets" because the Act does not recognize the pension fund as a county asset.

The HIM–15 provides reimbursement for actual costs incurred; therefore, the validity of Petitioner's argument depends upon whether the excess interest account is a County asset. We hold that the excess interest account is *not* a County asset. Section 7(a) of the Act specifically provides that the fund includes all interest earned by the investment of monies of the fund. 16 P.S. § 11657(a); *McCarrell.* Therefore, the excess interest account is part of the fund, which the County holds in trust for the benefit of the participating employees. The County's discretion to control the excess interest is limited to applying the excess interest to the CARA or to pensioners' cost of living increases or to retaining the monies in the account for the accrual of additional interest. Although the County may use the excess interest to satisfy its pension fund liability, it does not follow that Petitioner is entitled to Medicaid reimbursement for a transfer of such monies.

The OHA also denied reimbursement of that share of Petitioner's contribution drawn from the excess interest account for the reason that full liquidation of the liability did not

occur within the time frame specified in the HIM–15.[6] Our holding that payment from the excess interest account is not an allowable cost disposes of this issue.

For the above reasons, we affirm the order of the Office of Hearings and Appeals.

## ORDER

**AND NOW**, this 16th day of July, 1993, the order of the Department of Public Welfare, Office of Hearings and Appeals dated September 11, 1992 is hereby affirmed.

---

6. Section 2142.6(A) of the HIM–15 requires full liquidation of liability within one year after the end of the cost reporting period in which the liability is incurred or within three years after the end of the cost reporting period subject to an approved justification for non-payment.