59 F.Supp.2d 938 (1999)
CALL A NURSE, INC., Plaintiff,
v.
Donna SHALALA, Secretary of United States Department of Health and Human Services, Defendant.
No. 4:98CV1526 SNL.
United States District Court, E.D. Missouri, Eastern Division.
August 10, 1999.
*939 W. Stanley Walch, Partner, Jeffrey R. Fink, Thompson Coburn, Robert A. Helmer, Helmer Law Office, St. Louis, MO, for Call A Nurse, Inc., plaintiff.
Jane Rund, Office of U.S. Attorney, St. Louis, MO, Duane N. Bruce, U.S. Department of Health and Human Services, Office of General Counsel, Kansas City, MO, for Social Security Administration com Kenneth S. Apfel, defendant.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This matter is before the Court on cross motions for summary judgment. Plaintiff Call A Nurse, Inc., appeals from a final decision of the Secretary of the United States Department of Health and Human Services disallowing parts of Call A Nurse's claims for cost reimbursement under the Medicare program, 42 U.S.C. § 1395, et seq. At issue are claims for costs for fiscal years 1991, 1992 and 1993 of (1) services provided by a related organization, (2) salaries of three employees who also worked for the related organization, and (3) salaries of Call A Nurse's two owner/administrators.
Call A Nurse, owned and administered during the relevant time period by husband and wife William and Cecelia Norwood, participates in the Medicare program as a provider of home health care services to homebound Medicare beneficiaries in the greater St. Louis area.[1] The Norwoods also owned Data-Med, Inc., a company which supplied data processing services to Call A Nurse and other home health agencies. Data-Med's three employees also worked for Call A Nurse.
Under the Medicare program, providers such as Call A Nurse, may obtain reimbursement from the Secretary for the "reasonable costs" of treating Medicare patients. 42 U.S.C. § 1395f(b). To obtain reimbursement, the provider submits a cost report at the end of its fiscal year to a "fiscal intermediary," usually an insurance company under contract with the Secretary. The intermediary essentially acts as a claims adjuster for the Secretary and audits the report to determine how much of the provider's claimed Medicare reimbursement costs should be paid. If the provider is dissatisfied with any disallowances totaling over $10,000, the provider may appeal to the Provider Reimbursement Review Board (PRRB) which may affirm, modify or reverse the intermediary's determination. The Secretary may then affirm, modify or reverse the PRRB's decision within sixty days. If the provider remains dissatisfied, it may seek judicial review of the Secretary's decision. 42 U.S.C. §§ 1395h, 1395oo(a)-(f).
In the present case, Call A Nurse's cost reports submitted to the intermediary[2] for fiscal years 1991 and 1992, claimed a total of $88,557 for Data Med's charges. The intermediary reduced this amount to $35,700, which was the actual cost to Data Med of providing the services, on the ground that Data-Med was a "related organization" to Call A Nurse and did not qualify for an exception to the related-organization principles set forth in the agency regulations. By application of the "Medicare utilization factor," that is, the percent of the provider's services that went to Medicare beneficiaries, the reimbursement effect of this $52,857 adjustment was $48,675.
*940 The regulations provide that if a provider purchases services from a related organization, these costs will only be reimbursed to the provider at the cost to the related organization, rather than at the rate charged by the related organization, unless "the provider demonstrates by convincing evidence to the satisfaction of the fiscal intermediary" that, inter alia, the supplying organization is a "bona fide separate organization," and "a substantial part" of the supplying organization's business activity is transacted with other than the provider. Title 42 C.F.R. § 413.17. The Secretary's Provider Reimbursement Manual § 1010.1 explains that the exception "was intended to cover situations where goods and services are supplied to the general public and only incidently are furnished to related organizations."
For fiscal year 1993, the intermediary disallowed $67,764 of the $117,721 claimed as salaries of the three Call A Nurse employees who also worked for Data-Med. The reimbursement effect of this adjustment was $64,734. The intermediary believed that Data Med's high profit margin as compared to Call A Nurse's 1% profit margin made it clear that Call A Nurse was using Data Med as a way to shift costs and maximize reimbursement. (R. 1392). Likewise, the intermediary noted that the Data Med salaries of the three employees in question ($29,210) was understated with the effect of overstating the reimbursable Call A Nurse portion ($117,721) of their salaries. (R. 1395-96). In light of these indications, the intermediary concluded that because the time records submitted by Call A Nurse did not describe the activities actually performed for each company, the records were inadequate to properly allocate these employees' salaries between the two companies. Rather than totally disallowing these salaries, the intermediary adjusted them based on the percentage of Data-Med's revenue (34%) obtained from Call A Nurse[3].
Lastly, the intermediary disallowed portions of the compensation claimed for the Norwoods for all three fiscal years in question. In 1991, CEO William Norwood's compensation was $174,721, and Executive Director Cecelia Norwood's compensation was $158,850; the intermediary allowed $96,475 and $89,555, respectively. In 1992 William Norwood's compensation was $200,677, and Cecelia Norwood's compensation was $185,112; the intermediary allowed $100,623 and $93,407, respectively. In 1993, William Norwood's compensation was $204,302, and Cecelia Norwood's compensation was $186,164; the intermediary allowed $106,384 and $97,972, respectively. The total disallowed in this category for the three years was $525,410. The reimbursement effect of this adjustment was $502,138.
The intermediary determined the reasonable compensation for the Norwoods by applying the "Michigan Survey," updated for inflation. This survey, conducted in 1979, sets forth reasonable salary ranges for owner/administrators of outpatient physical therapy (OPT) clinics, and a method for placing a particular owner/administrator within the range by assigning points based on education, experience, volume of business, job duties and geographic area (rural, urban or metropolitan). Most of the individuals surveyed performed dual roles as part-time therapist and part-time administrator. The ranges are derived from data from 16 visiting nurse associations and home health agencies in Michigan (R. 1746-63).
The record establishes that William Norwood has a bachelor's degree in business administration and a master's degree in health care administration. He entered the home health industry in 1970. Cecelia Norwood has a bachelor's degree in teaching and a master's degree in communications. She entered the medical administration field in 1977. By 1993, Call A Nurse, founded by the Norwoods in 1983, *941 had one home office and nine branch offices, 93 employees (mostly nurses), approximately 60,000 home visits per year, and approximately $8,200,000 in annual revenue. The Norwoods worked full time in their positions with Call A Nurse. The intermediary took these facts into account in determining where in the Michigan Survey ranges to place the Norwoods (R. 1707-09).
Call A Nurse appealed the intermediary's decision and a hearing was held before the PRRB. In its position paper submitted to the PRRB on this issue, the intermediary noted that the results obtained by using the Michigan Survey were comparable to the results obtained by using two other surveys  the Missouri Alliance for Home Care (MAHC) Home Care Salary Survey and the National Association for Home Care (NAHC) Health Agency Compensation Survey (Exhibits I-6 & I-7 to intermediary's position paper  R. 1770-95).
Randall Dunham, an expert in compensation in the health care industry, testified on behalf of Call A Nurse, criticizing various aspects of the Michigan Survey. (R. 419-45). He testified as to reasonable compensation ranges for the Norwoods, based on the Dunham Evaluation Survey prepared in 1990 (R. 138-63). The guidelines established by this survey, as applied to the Norwoods, encompassed the salaries they were actually paid.
The PRRB affirmed the intermediary on the related-organization issue and on the allocation of the shared-employees' salaries issue, but reversed the intermediary on the owner/administrators' compensation issue.[5] On this last issue, the PRRB found that "there was no assurance that the compensation data contained in the Michigan Survey is representative of the compensation levels by Health Care Organizations in the Provider's geographical location. In addition, the Michigan Survey is designed for OPT owner administrators rather than home health agency owner/ administrators." (R. 102). The PRRB rejected the intermediary's reliance on the corroboration of the other two surveys, noting that the data in these surveys "appears to be statistically incomplete." The PRRB found that the Dunham evaluation represented the best evidence in the record on this matter.
The Secretary, upon review of the entire record, then affirmed the PRRB on the first two issues, but reversed on the third issue. The Secretary first concluded that Call A Nurse was not entitled to reimbursement for the costs of the services supplied by Data Med at the rate charged by Data Med. Rather, reimbursement for these costs was proper only at the amount of the cost to Data Med of supplying these services. The Secretary noted that Data Med and Call A Nurse were housed in the same office building and that all of Data Med's employees also worked for Call A Nurse, thereby indicating that Data Med was not a "bona fide separate organization." The Secretary also concluded that because charges to Call A Nurse represented more than one-third of Data Med's business for the years in question, the "substantial part of its business activity" requirement, as interpreted in the Provider Reimbursement Manual, for an exception to the general rule of 42 C.F.R. § 413.17 was not met.
The Secretary next concluded that the intermediary's method of allocating the salaries of the shared Call A Nurse / Data Med employees was correct in light of the inadequate payroll records submitted by Call A Nurse.
With regard to the Norwoods' salaries, the Secretary determined that reliance on the Michigan Survey complied with agency regulation 42 C.F.R. § 413.102(c)(2) which provides that "reasonableness of [owner] compensation may be determined by reference to, or in comparison with, compensation paid for comparable services and responsibilities in comparable institutions, or *942 it may be determined by other appropriate means." The Secretary noted that the intermediary's determination of reasonableness using the Michigan Survey was consistent with the salary ranges reflected in the other two surveys in the intermediary's position paper before the PRRB.
Judicial review of the Secretary's decision is governed by 42 U.S.C. § 1395oo, which incorporates the standard of review of the Administrative Procedure Act, 5 U.S.C. § 706. The Court must thus uphold the Secretary's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law .... or unsupported by substantial evidence in the record as a whole." Title 5 U.S.C. § 706(2)A, E. In this context, "substantial evidence" does not mean a preponderance of the evidence, but only "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." Home Health Servs. v. Schweiker, 683 F.2d 353, 356 (11th Cir. 1982); see also Mercy Hosp. v. Heckler, 777 F.2d 1028, 1031 (5th Cir.1985). Under this narrow standard of review, a court lacks the power to substitute its judgment for that of the Secretary. Id. Furthermore, a reviewing court must give an agency's interpretation of its own regulations great deference. Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994); Healtheast Bethesda Lutheran Hosp. & Rehabilitation Ctr. v. Shalala, 164 F.3d 415, 416 (8th Cir.1998). A reviewing court should not reject a reasonable administrative interpretation even if another interpretation may also be reasonable. Creighton Omaha Reg'l Health Care Corp. v. Bowen, 822 F.2d 785, 789 (8th Cir.1987). Only if the Court, upon review of the record as a whole, "is left with the firm conviction that the agency has acted arbitrarily and capriciously, or that the regulation, rule or decision is not rationally related to the statute or the evidence, and that a clear error of judgment has been committed," may the Court reverse. Mercy Hosp. v. Heckler, 777 F.2d at 1032. This broad deference "is all the more warranted when, as here [in the case of Medicare reimbursement regulations], the regulations concern a complex and highly technical regulatory program in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns." Thomas Jefferson Univ. v. Shalala, 512 U.S. at 512, 114 S.Ct. 2381.
Call A Nurse's primary argument before this Court is that the Secretary's reliance on the Michigan Survey to disallow a portion of their salaries was arbitrary and capricious, and that this survey can not be accepted as substantial evidence to support the Secretary's decision. Call A Nurse points to the facts that the survey was developed for OPT clinics and not home nursing agencies; that the underlying data, such as whether the reporting agencies were not-for-profit or for-profit, is not reported; and that the inflationary factors used to update the salary ranges were inadequate because they were based on general inflation and did not reflect the disproportionate inflation in health care costs. Call A Nurse argues that the other two surveys noted by the Secretary are also flawed.
Congress has given the Secretary broad discretion in developing the proper methods for determining reasonable costs. See 42 U.S.C. § 1395x(v)(1)(A). Medicare regulation 42 C.F.R. § 413.9(2)(c) explains:
The costs of providers' services may vary from one provider to another and the variations generally reflect differences in scope of services and intensity of care. The provision in Medicare for payment of reasonable cost of services is intended to meet the actual costs, however widely they may vary from one institution to another. This is subject to the limitation if a particular institution's costs are found to be substantially out of line with other institutions in the same area that are similar in size, scope of *943 services, utilization and other relevant factors.
Thus, it is Secretary's burden to demonstrate that the Norwoods' compensation was substantially out of line when compared to that of owners of similar providers. See At Home Health, Inc. v. Shalala, 1999 WL 167245, at *4 (N.D.Ill. Mar. 18, 1999) (citing Memorial Hospital/Adair County Health Ctr. v. Bowen, 829 F.2d 111 (D.C.Cir.1987)).
Upon review of the record, the Court believes that reliance in this case upon the Michigan Survey was arbitrary because the OTP clinics studied in that survey were not comparable to Call A Nurse in size, organizational structure, type of services provided, personnel employed, or geographic area. Furthermore, it is not reasonable to compare the salaries of the Norwoods to those of physical therapists who act as part-time administrators of relatively small clinics. Cf. Memorial Hospital/Adair County Health Ctr. v. Bowen, 829 F.2d 111 (Secretary's determination that hospital's costs of pharmacy services to Medicare patients were substantially out of line with those of other hospitals reversed because comparison hospitals did not provide same kind of pharmacy services).
The Secretary's reliance on the Michigan Survey is especially troubling in light of the fact that the record contains a much more reliable means of determining the reasonableness of the salaries in question, namely, the Dunham evaluation. See At Home Health Inc. v. Shalala, 1999 WL 167245 (Secretary properly relied on Dunham survey; owners' compensation was not substantially out of line even though 5 ½% over maximum allowable under survey). As noted above, the Norwoods' salaries were in line with this evaluation. Upon review of the entire record, the Court believes that on this issue the PRRB's determination was well-reasoned and should have been upheld by the Secretary. Accordingly, Call A Nurse is entitled to the $502,138  the effect of the reimbursement disallowance on this issue.
Call A Nurse next argues that the Secretary's decision with regard to the 1993 salaries of the three shared employees is not supported by substantial evidence because the Secretary failed to elaborate on its reasons for affirming the PRRB on this issue. Call A Nurse also maintains that the time records submitted to the intermediary were adequate, and that a delineation of specific tasks performed by these employees was not required. Call A Nurse also attacks the specific method used to allocate the salaries and proffers a different methodology based upon the percentage Data Med's annual revenue in relation to that of Call A Nurse (approximately 10%), rather than upon the percentage of Data Med's revenue it derived from Call A Nurse (34%).
Upon review of the record, the Court concludes that the Secretary's decision is not arbitrary and is supported by substantial evidence. The intermediary's analysis of the time records submitted was thorough and supports the conclusions regarding the operations of the two companies. Due to the relatedness of Data Med and Call A Nurse, it was not unreasonable to allocate the salaries in question in the manner approved by the Secretary.
Call A Nurse's final argument is that the Secretary's decision with regard to Data Med's charges to Call A Nurse must be reversed. Call A Nurse argues that it satisfied each of the requirements of the exception to the related-organization rule, pointing to PRRB decisions in other cases wherein it was held that even less than 65% of outside activity was considered "substantial." Call A Nurse does not challenge the Secretary's determination that the actual cost to Data Med of providing the services in question was $35,700.
Providers such as Call A Nurse are entitled to reimbursement for indirect costs such as data processing. The Secretary has determined, however, that when such *944 services are furnished to a provider by a "related organization," there is a significant likelihood that charges incurred by the provider will be artificially inflated to maximize reimbursement. To ensure that the Medicare program will not bear the costs of such self-dealing, the Secretary has promulgated a "prophylactic rule ... to police `sweetheart' contracts with suppliers that may inflate costs to the provider." Biloxi Regional Med. Ctr. v. Bowen, 835 F.2d 345, 349-50 (D.C.Cir.1987). "Reasonable costs" for such a provider are the actual costs incurred by the related supplier, rather than the amount the provider pays to it.
The Court believes that a close question is presented on whether Call A Nurse met the requirements for an exception to the general rule of related organizations. In light of this court's limited scope of review, see Thomas Jefferson Univ. v. Shalala, 512 U.S. at 516, 114 S.Ct. 2381, the Court will defer to the Secretary's interpretation of its regulation and its application to the particular facts of this case. See Condado Home Care Program v. Cooperativa De Seguros De Vida, 775 F.2d 457 (1st Cir.1985) (where 33% of related organization's business was with provider, provider failed to satisfy substantial-outside-activity requirement, as interpreted in the agency's Provider Reimbursement Manual).
Accordingly,
IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is granted in part and denied in part.
IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted in part and denied in part.
NOTES
[1] Call A Nurse operated two home health agencies, one in Missouri and one in Illinois; each was certified as a Medicare provider.
[2] Two separate insurance companies acted as fiscal intermediaries for Call A Nurse, one for each of its agencies. These intermediaries adopted the same disallowances and, for clarity, are referred to in the record and in this Memorandum and Order as "the intermediary."
[3] Data Med's revenue from Call A Nurse was $56,204; Data Med's total revenue was $167,354. 34% of the three shared employees's total salaries of $146,931 is $67,764.
[5] The PRRB's vote was 2-1 on the first two issues, and unanimous on the last issue.